[No. B084508. Second Dist., Div. Two. Jan. 23, 1996.]

HEDGING CONCEPTS, INC., Plaintiff and Appellant, v.
FIRST ALLIANCE MORTGAGE COMPANY, Defendant and Appellant.

## COUNSEL

Jennifer L. Kurzon and Jim Goff for Defendant and Appellant.

Kulik, Gottesman & Mouton, Glen L. Kulik and Claudia Ribet for Plaintiff and Appellant.

## OPINION

**ZEBROWSKI, J.**—This appeal concerns a contract dispute tried to the court. The court found that defendant's understanding of the contract was correct, that plaintiff had not performed a condition precedent to plaintiff's right to be paid, and that defendant had therefore not breached the contract by not paying. The court then declared the contract rescinded and awarded a quantum meruit recovery to plaintiff, notwithstanding that the court had found that plaintiff had not performed and that defendant had not breached. Attorney fees requested by the prevailing party defendant on plaintiff's breach of contract claim were denied. Prejudgment interest and costs were awarded to plaintiff.

The trial court's construction of the contract, the finding that plaintiff had not performed, and the finding that defendant had not breached are affirmed. The award of quantum meruit damages, prejudgment interest and costs to plaintiff is reversed. The case is remanded for a determination of attorney fees to the prevailing party defendant, plus costs.

## THE FACTS

Defendant First Alliance Mortgage Company is a corporation engaged in arranging, purchasing and selling second trust deed loans. First Alliance has many employees, but Brian Chisick is the sole owner. Plaintiff Hedging Concepts, Inc., is the one-person financial consulting corporation of Dennis Rosenfeld.

In early 1989, Rosenfeld (on behalf of Hedging) proposed to Chisick (on behalf of First Alliance) that Rosenfeld/Hedging assist First Alliance in arranging financial transactions called "securitizations." A "securitization" is a bundling of secured real property loans for sale as a group to institutional investors. Although the securitization technique had previously been used with first trust deeds, securitization was not commonly used with second trust deeds as of 1989. A securitization transaction consists of several components, involves an investment banker, rating agency and trustee, and can take a year or more to complete. A party (such as First Alliance) which originates loans which are securitized can earn higher profits than from selling loans individually. Neither Rosenfeld nor Chisick had previously been involved in a securitization.

After some discussion between Rosenfeld (for Hedging) and Chisick (for First Alliance), Rosenfeld sent Chisick a letter in February of 1989 which Chisick signed and returned. The question at trial was exactly what the parties agreed to by their discussions and this letter.

Chisick testified that he and Rosenfeld discussed that First Alliance would pay a commission to Rosenfeld/Hedging only if a securitization was successfully completed through Rosenfeld's efforts. When he received Rosenfeld's letter, Chisick interpreted it to condition Rosenfeld's right to payment upon his procuring a completed securitization.

The letter states that it contains "an agreement which will govern the amount of compensation paid to Hedging Concepts, Inc. in the event that a successful securitization . . . is initiated through firms introduced by Hedging Concepts, Inc. to First Alliance Mortgage Company." The letter goes on to provide that First Alliance agrees to pay Hedging a fixed percentage

commission on "the principal balance of all mortgages sold, securitized or delivered to or through firms located or introduced by" Hedging for a period of 10 years. The balance of the letter covers matters not necessary to detail here.

Although Rosenfeld's letter specifies the details of rate, timing and duration of Rosenfeld/Hedging's right to payments, the letter does not expressly describe the duties Rosenfeld/Hedging will perform in order to be entitled to such payments. The uncertainty in Rosenfeld's letter regarding what duties Rosenfeld/Hedging was to perform resulted in this dispute.

After the letter was signed in March of 1989, Rosenfeld began to "register" names of various financial institutions with First Alliance by sending frequent letters to First Alliance listing the names of various financial institutions. About five months later, on July 31 of 1989, Rosenfeld informed First Alliance by letter that "the bulk" of his "explorations" had been completed, although he might later add "additional names." The letter stated that in Rosenfeld's opinion, he had "introduced" First Alliance "to nearly every competitive buyer of second trust deeds in the United States." Included on Rosenfeld's list were many of the better known financial institutions operating in the United States.[1]

Upon receiving the July 31 letter from Rosenfeld, Chisick wrote back in early August that it was not his understanding that Rosenfeld merely had to "register" names in order to lock himself into a commission for 10 years. Subsequent efforts to clarify the terms of the agreement were not fruitful. In September, Rosenfeld's lawyer wrote to First Alliance that Rosenfeld had fulfilled his obligations under the agreement by "introducing" First Alliance to the listed parties. Dealings between Hedging and First Alliance terminated at about this time.

Approximately a year and a half later, in early 1991, First Alliance contracted with a different financial adviser for the arrangement of securitizations. Compensation to the adviser was contingent upon his being the procuring cause of a completed securitization. In 1992 and 1993, the new adviser completed three securitizations for First Alliance. Although these

---

[1]For example, such well-known institutions as Chemical Bank, Bank of New York, Bank of Boston, Great American Savings, Great Western Savings, Countrywide Thrift, Morgan Stanley, Bankers Trust, Prudential Bache, Paine Webber, Salomon Brothers, Dean Witter, Merrill Lynch, Shearson Lehman, Bear Stearns, Sanwa Bank, Sumitomo Bank, Goldman Sachs, Drexel Burnham, Bank of America, First Boston, Chase Manhattan, Kidder Peabody, Mellon Bank, etc. were on Rosenfeld's list. The names of several of these entities were misspelled and have been corrected here for clarity.

securitizations involved companies whose names had previously appeared on Rosenfeld's "registration" list, the new adviser never heard Rosenfeld's or Hedging's name mentioned, nor did he use any documents or information generated by Rosenfeld or Hedging.[2]

## THE LAWSUIT

Hedging sued First Alliance for fraud and breach of contract, and Chisick for fraud. First Alliance cross-claimed for fraud and negligent misrepresentation against both Rosenfeld and Hedging, and sought rescission and declaratory relief against Hedging only.

The issue was the meaning of the contract. Rosenfeld/Hedging contended that Rosenfeld/Hedging's duties were limited to "registering" names and that Hedging was entitled to payment if any securitization were completed by First Alliance within 10 years with any of the entities on Rosenfeld's "registration" list. First Alliance contended that Rosenfeld/Hedging actually had to procure a completed securitization agreement before being entitled to payment.

The February 1989 letter written by Rosenfeld was not necessarily an integrated agreement and was reasonably susceptible to either interpretation. The trial court therefore properly accepted parol evidence to explain the meaning of the contract. See, generally, Wegner et al., California Practice Guide: Civil Trials and Evidence (The Rutter Group 1994), section 8:3102 et seq. (admissibility of parol evidence to aid interpretation of written agreement) and cases cited there; 2 Witkin, California Evidence (3d ed. 1986), Documentary Evidence, section 975 et seq., page 920 (when extrinsic evidence admissible) and section 984, pages 930-931 (discussing *Pacific Gas & Electric* rule).[3]

At the close of plaintiff's case, the trial judge sua sponte raised the prospect of a quantum meruit award to Rosenfeld/Hedging if "a contract didn't come into effect." Although First Alliance and Chisick protested that quantum meruit had not been pleaded or prepared for, the court stated that

---

[2]The record reflects that the new adviser was paid for his services; First Alliance did not accomplish the securitizations free of charge. Any recovery by Rosenfeld/Hedging here would be in addition to the fees already paid by First Alliance for the successful securitizations. In view of these facts and the trial court's finding that Rosenfeld/Hedging was not the procuring cause of the securitizations, there appears to be no basis for a claim that First Alliance was unjustly enriched.

[3]Plaintiff complains that some testimony concerned Chisick's undisclosed subjective understandings, and that subjective undisclosed understandings cannot contribute to contract formation. While this is true, we find no reversible error in light of all the evidence.

"[i]f there is a ruling that the contract is for one reason or another invalid, then quantum meruit would have an application, and I will permit the amendment to conform to proof."[4]

Motions eliminated all of Rosenfeld/Hedging's claims other than breach of contract. Other motions eliminated all of First Alliance and Chisick's claims except those for declaratory relief and rescission on grounds of failure of consideration and mutual mistake.

### THE STATEMENT OF DECISION

The trial court issued a statement of decision finding: "Rosenfeld thought commissions were payable for an introduction to prospects with whom First Alliance might do any business during the following ten years. First Alliance thought commissions were payable for procuring a deal . . . .

"On this point, the differences between the parties is obvious and blatant: Plaintiff, fee entitlement for an introduction; defendant, fee entitlement for effecting a deal. There never was or had been any meeting of the minds on these points."

Instead of declaring a lack of contract formation at this point, however, the statement of decision goes on to evaluate "the factual arrangement of the parties in the light of common understanding and customary business practices in order to arrive at an understanding of the true arrangement of the parties." In evaluating the arrangement of the parties, the court found "no rational basis to support an agreement which would provide for payment of large fees to a finder for introduction to 92 entities, fees payable if the principal did business with any of these entities during the following ten years." After further analogies and analysis, the statement of decision continues: "The issue and the essential point of the contract visualized a consummation of a deal within a reasonable period of time. It did not visualize general solicitation of and compilation of a list of the principal entities active in the business of buying and marketing pool mortgages . . . ."

The court's subsequent inquiry into objective indicators of contractual intent indicates that the court's prior "meeting of the minds" statement referred only to the parties' differing subjective understandings. The court

---

[4]No such amendment to "conform to proof" was ever actually requested or granted, but this is not expressly made a ground for appeal. Nor is there a claim of lack of due process notice, time to prepare, etc., nor a claim that evidence regarding quantum meruit was irrelevant and inadmissible in view of the pleadings.

noted the argument that "a private understanding of a party in the construction of a contract is immaterial" before launching into an evaluation of the objective evidence of contractual intent. This, plus the trial court's later declaration that the "contract" was rescinded (see below), causes us to conclude that the trial court found that a contract had been formed.[5]

After finding contract formation, the trial court then found that the "missing factor here is any cause or[6] connection between Rosenfeld's activities in mid-1989 and the private placements effected in March and November 1992, and August 1993." The trial court then evaluated the law regarding finders, and noted that there was no evidence that Rosenfeld/Hedging was a procuring cause of any of the three securitization transactions completed several years later, and that the procuring cause element is commonly required in the finder context.

The statement of decision next states: "The Court concludes that the contract must be rescinded on the basis of mistake." Since a contract cannot be rescinded if it has never been formed, the trial court was necessarily making a finding that a contract had been formed.

In light of the trial court's discussion of the requirement of procuring cause, and the finding of no causal connection between Rosenfeld's activities and the securitizations several years later, we conclude that the trial court found that the parties' agreement provided that Rosenfeld/Hedging had to be a procuring cause of a securitization agreement before the right to payment arose, and that Rosenfeld/Hedging was not the procuring cause of the securitizations completed several years later.

After declaring the contract rescinded on grounds of "mistake," the court went on to award Rosenfeld/Hedging a quantum meruit recovery for the reasonable value of services performed plus costs.[7] Attorney fees were denied to First Alliance. Prejudgment interest was later added to Rosenfeld/Hedging's quantum meruit recovery.

### THE QUANTUM MERUIT AWARD

*The underlying contract.*

By its statement of decision, the court found that the parties formed a contract which provided that Rosenfeld/Hedging would attempt to arrange

---

[5]Substantial evidence supports this finding.

[6]Presumably "causal" was intended; the statement of decision was originally delivered orally and was transcribed.

[7]The statement of decision does not reveal what "mistake" the court was referring to. If Rosenfeld had successfully completed a securitization, he would no doubt have been entitled to payment at the contract rate and according to the contractual terms.

securitizations for First Alliance. If Rosenfeld was successful, he would be paid an attractive commission. If he was not successful, he would be paid nothing. According to the parties' agreement as found by the trial court, Rosenfeld/Hedging's right to compensation was contingent upon success. The court further found that Rosenfeld did not perform the contingency. We have examined the record and find these factual findings supported by substantial evidence.

*The quantum meruit award conflicts with the contract.*

■ A quantum meruit or quasi-contractual recovery rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice. See, e.g., 1 Witkin, Summary of California Law (9th ed. 1987) Contracts, sections 12, page 47; 91, pages 122-123; 112, pages 137-138. However, it is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation. *Willman* v. *Gustafson* (1944) 63 Cal.App.2d 830 [147 P.2d 636] (there can be no implied promise to pay reasonable value for services when there is an express agreement to pay a fixed sum). See also 55 California Jurisprudence Third, Restitution, sections 19, page 328 et seq.; and 58, and pages 375-376 (no ground to imply payment obligation in conflict with express contract).

Quantum meruit is an equitable theory which supplies, by implication and in furtherance of equity, implicitly missing contractual terms. Contractual terms regarding a subject are not implicitly missing when the parties have agreed on express terms regarding that subject. A quantum meruit analysis cannot supply "missing" terms that are not missing. "The reason for the rule is simply that where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability. . . ." *Wal-Noon Corp.* v. *Hill* (1975) 45 Cal.App.3d 605, 613 [119 Cal.Rptr. 646]. See also *Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1393 [265 Cal.Rptr. 412] (there can be no implied contractual term completely at variance with an express term of a contract); *Wilkerson* v. *Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1227 [261 Cal.Rptr. 185] (citing *Wal-Noon*, inequitable to imply obligation different from those in parties' bargain); *Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 754 [200 Cal.Rptr. 605] (well settled that a covenant will not be implied against express terms of contract); and *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 482 [199 Cal.Rptr. 613], disapproved on other grounds in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 688, 700,

footnote 42 [254 Cal.Rptr. 211, 765 P.2d 373] (there cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results).

■ The trial court violated the rule that equitable entitlement to a quantum meruit payment is not implied where the parties have actual contract terms covering payment. The trial court made a factual finding that the parties had formed an actual, not an implied, contract. The court also made a factual finding that the actual contract conditioned Rosenfeld/Hedging's right to payment upon the procurement of a securitization. The court also made the factual finding that Rosenfeld/Hedging had not procured a securitization and that the condition precedent to payment had therefore not been satisfied. In light of these factual findings, it was error for the trial court then to rule that First Alliance nevertheless had an equitable implied-in-law duty to pay money to Rosenfeld/Hedging. The legal ruling is inconsistent with the factual findings.

When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract.[8]

*No basis for rescission was in evidence.*

■ The court declared the contract rescinded because of "mistake." Neither the statement of decision nor the trial transcript expressly identifies what the "mistake" was, but the briefing, the context, and the lack of other candidates confirms that the purported "mistake" was simply Rosenfeld's misunderstanding of his contractual duties.

First Alliance was the party seeking the rescission which the court apparently granted on the basis of the "mistake" made by Rosenfeld. It is anomalous on its face that the court would order First Alliance to pay Rosenfeld/Hedging, in direct contradiction of the contract, when Rosenfeld was the one who purportedly made a "mistake." Examination of the controlling statutes reveals that this anomaly was created by misapplication of the statutes.

---

[8]By contrast, if a court finds no contract formation, the court can then in certain circumstances find an implied contract to pay reasonable value for beneficial services rendered with a mistaken belief that a contract had been formed. See 1 Witkin, Summary of California Law, *supra*, Contracts, section 104 et seq., page 131. Here, however, the court found the parties did have a contract covering compensation, and the terms of the parties' contract thus control the subject of compensation.

The grounds for rescission are stated in Civil Code section 1689. One such ground exists when consent to a contract is given by "mistake." The term "mistake" in Civil Code section 1689, however, is a legal term with a legal meaning.

The type of "mistake" that will support rescission is defined in Civil Code section 1577 ("mistake of fact") and Civil Code section 1578 ("mistake of law"). Clearly, there was no mistake of objective existing fact involved here, and Civil Code section 1577 therefore does not apply. The supposed mistake was instead Rosenfeld's subjective misinterpretation of the contract. This is at most a mistake of law.[9]

However, Rosenfeld's misinterpretation of the contract does not fit the definition of mistake of law supporting rescission. A mistake of law as defined by Civil Code section 1578 exists only when 1) all parties think they know and understand the law but all are mistaken in the same way, or 2) when one side misunderstands the law at the time of contract and the other side knows it, but does not rectify that misunderstanding. Neither of these two possibilities occurred on the facts found by the trial court. Clearly, each side here placed a different interpretation on the contract, hence all parties did not make the same mistake. In fact, the court found that First Alliance made no mistake at all, but rather understood the contract correctly. Nor was there a finding (nor any evidence) that either party knew at the time of contract that the other side misunderstood the deal, and yet failed to rectify that misunderstanding. Instead, the court simply found that the parties had differing subjective understandings of the contract from the inception. This does not constitute a "mistake" for rescission purposes.

". . . [I]n the interest of preserving some reasonable stability in commercial transactions, the courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of, or to have misunderstood, the provisions of the contract." 14 California Jurisprudence Third, Contracts, section 72, page 271. There are two reasons courts will not set aside contracts for mere subjective misinterpretation. First, to declare rescission based upon mistaken undisclosed subjective interpretation would conflict with the objective theory of enforceable contracts. If this were the law, the objective theory of contracts would give with one hand, while the subjective misunderstanding theory of rescission would take away with the other. This

---

[9]A mistake of law is when a person knows the facts as they really are, but has a mistaken belief as to the legal consequences of those facts. See, e.g., *In re Marriage of Mansell* (1989) 217 Cal.App.3d 219, 234 [265 Cal.Rptr. 227].

is not the law. Second, a unilateral misinterpretation of contractual terms, without knowledge by the other party at the time of contract, does not constitute a mistake under either Civil Code section 1577 or 1578. See, generally, 1 Witkin, Summary of California Law, *supra*, Contracts, section 379, pages 345-346.

■ The trial court therefore erred in declaring the contract rescinded on the basis of Rosenfeld's misunderstanding of the contract. The quantum meruit award therefore cannot be supported on the theory that it was justified by rescission.

*Even if the contract were rescinded, a quantum meruit award would be error.*

■ Even if rescission were proper as to future contractual relations on the facts found by the trial court, a quantum meruit award for past events would still not be. Apparently the trial court declared rescission in order to invoke Civil Code section 1692. Civil Code section 1692 provides generally that a court may award against a party seeking rescission "any compensation to the other which justice may require," and permits the court to "otherwise in its judgment adjust the equities. . . ." It also provides that any party to a rescinded contract may seek to recover "any money . . . owing to him" or seek "any other relief to which he may be entitled under the circumstances." Civil Code section 1692 in essence restates the equity jurisprudence applicable in the rescission context.

The circumstances found by the trial court, however, were that the parties had an actual contract with a contingent-compensation term, and that the contingency simply had not occurred. Under these circumstances, "justice" did not require that Rosenfeld/Hedging receive any "compensation." Nor was there any "money . . . owing to him." Nor was Rosenfeld/Hedging "entitled" to any "other relief."

Nor could the court properly order First Alliance to pay Rosenfeld/Hedging on the general concept of "adjusting the equities." On the facts found by the trial court, the contractual contingency had simply failed and the "equities" needed no adjustment. For the court nevertheless to require First Alliance to pay Rosenfeld in order to "adjust the equities" would simply be to rewrite that term of the parties' contract. Civil Code section 1692 does not provide authority for judicial restructuring of the agreed terms of a contract. Instead, Civil Code section 1692 simply restates the equity jurisprudence allowing a court to adjust equities a) that implicitly need adjustment, and b) that the parties have not already expressly adjusted by their contract.

In the final analysis, the parties had an actual contract covering the terms of compensation. The right to payment was contingent. The contingency did not occur. First Alliance is entitled to the benefit of that bargain.

## ATTORNEY FEES

"Under Civil Code 1717, the prevailing party is entitled to attorney's fees even when it wins on the grounds that the contract is inapplicable, invalid, unenforceable or nonexistent, so long as the party pursuing the lawsuit would have been entitled to attorney's fees had it prevailed." *Rainier National Bank* v. *Bodily* (1991) 232 Cal.App.3d 83, 86 [282 Cal.Rptr. 926].

The letter drafted by Rosenfeld and signed by Chisick contained a clause providing for the prevailing party to receive attorney fees. Had Hedging prevailed on its contract claim, Hedging would undoubtedly have received fees against First Alliance. First Alliance is therefore entitled to fees against Hedging.

## DISPOSITION

The award of quantum meruit damages to Hedging is reversed, as is the related award of prejudgment interest and costs. The case is remanded to the trial court for the setting of costs and fees to First Alliance. Otherwise the judgment is affirmed. First Alliance to recover costs, including reasonable attorney fees, on appeal.

Fukuto, Acting P. J., and Nott, J., concurred.

A petition for a rehearing was denied February 22, 1996, and the opinion was modified to read as printed above. The petition of appellant Hedging Concepts, Inc., for review by the Supreme Court was denied April 10, 1996.