Filed 4/29/14  Silva v. Spring CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRED SILVA, | |
| Plaintiff and Appellant, | G048485 |
| v. | (Super. Ct. No. 30-2012-00603067) |
| JOHN W. SPRING et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment and orders of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed.

Law Offices of Ernest Mooney and W. Ernest Mooney for Plaintiff and Appellant.

Macrae & Edrington, Jean Moriarty; Law Office of Priscilla Slocum and Priscilla Slocum for Defendants and Respondents.

\*          \*          \*

The superior court granted the defendants' anti-SLAPP motions to strike all five causes of action in plaintiff Fred Silva's complaint. Silva appealed and claims four of his five causes of action did not involve protected activity. He also claims the court erred in striking his fifth cause of action for retaliatory eviction because he established a likelihood of prevailing on that cause of action, just as he had established a likelihood of prevailing on the first four causes of action. In addition, Silva argues the award of attorney fees and costs must be reversed if we reverse the superior court's ruling on the motions to strike. We reject his contentions and affirm.

I

FACTS

Defendants John Spring, his wife Mary, and his brother Carl[1] (collectively defendants) as trustee for Carl's family trust, own a two-unit piece of property in Sunset Beach. By their agreement, Carl has the exclusive right to possess unit A and John and Mary have the exclusive right to possess unit B. Unit B was vacant and John and Mary were looking to rent it out for $2,200 a month. In July 2008, Silva entered into a lease with John and Mary. Silva drafted the written lease. The lease provided it would run for one year commencing August 1, 2008, with an "option for additional years." In addition to paying a reduced monthly rent of $2,000, Silva was to make certain listed repairs to the property "at no cost" to John and Mary. Silva installed new kitchen cabinets, granite countertops, a shower, sinks and faucets, flooring, ceiling fans, electrical wiring, window coverings, front and back doors, and a new security system.

Silva's next door neighbor on the property lived in that portion run by Carl. Silva's declaration stated he complained to Carl on "numerous occasions" and "sometimes" to John about the other tenant's noise.

---

[1] Because the three defendants share the same surname, we refer to each by their given names for ease of reading. No disrespect is intended.

The lease was not extended and by operation of law turned into a month-to-month tenancy at the expiration of its term in 2009.  (Civ. Code, § 1945.)  Years later, at the end of April 2012, Silva was served a 60-day notice to terminate the tenancy.  John subsequently filed an unlawful detainer action against Silva in July 2012, alleging Silva owed $6,000 in rent.  Silva initially opposed the action and filed an answer alleging three affirmative defenses.  He alleged "Spring is equitably estopped from asserting that the subject tenancy was a month-to-month tenancy, as Spring promised Silva that, if Silva made extensive investments and repairs to the subject property, Silva could continue to reside in the premises, through the exercise of one-year lease options, as long as Silva desired, providing that Silva was not in breach of the lease.  In reliance upon this promise, Silva spent in excess of $16,000 in making improvements and repairs to the premises."  Silva further alleged the unlawful detainer was in retaliation to his pursuit of the quiet enjoyment of the property, in that he had complained of the "noisy and disruptive behavior" of the tenant in the adjacent unit.  According to a declaration filed by John in the present case, the last time Silva had complained about the noise was two years before Silva was served with the notice to vacate.  The unlawful detainer matter eventually resulted in a stipulated judgment wherein John was to receive possession of the premises and Silva agreed to pay $7,500 for rent and damages, plus $227.50 in attorney fees.

Silva subsequently filed a complaint against John, Mary, and Carl for breach of contract, fraud, quantum meruit, unjust enrichment, and retaliatory eviction. Silva alleged there had been an agreement that if he made certain improvements to the property and did not breach the agreement, he could stay in the property as long as he desired, he made the improvements, he was denied the quiet enjoyment of the property, the unlawful detainer action was a retaliatory eviction, and the improvements he made to the property unjustly enriched the defendants.

3

John and Mary filed anti-SLAPP motions (Code Civ. Proc., § 425.16; all undesignated statutory references are to this code) to strike the complaint. Carl joined in Mary's motion. The court granted the motions, striking all five causes of action. The court awarded John and Mary $8,291.50 in attorney fees and $229.75 in costs.

II

DISCUSSION

"SLAPP is an acronym for 'strategic lawsuit against public participation.' [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 816, fn. 1.) In order to combat what the Legislature described as "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances," it enacted section 425.16. (§ 425.16, subd. (a).) That section provides for early dismissal of a SLAPP via a special motion to strike causes of action "arising from" the exercise of the right of free speech or the right to petition. (§ 425.16, subd. (b)(1).) These are commonly known as "anti-SLAPP" motions. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732-733.)

The determination of whether an action is a SLAPP involves a two-step process. First, the defendant bears the initial burden of demonstrating the challenged cause of action arose from protected activity set forth in subdivision (e) of section 425.16. "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4)

4

any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"[T]he the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) A defendant's filing of a lawsuit qualifies as an act in furtherance of the defendant's right to petition. There is no need to establish the litigated matter concerned a matter of public interest. (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1478.)

If a defendant makes this initial showing, the burden then shifts to the plaintiff to demonstrate a probability of prevailing on his or her claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) The plaintiff's burden corresponds to the burden borne by a party opposing a motion for summary judgment. (*Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 947; *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 317.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89; § 425.16, subd. (b)(1).)

We review de novo an order granting or denying a motion to strike under section 425.16, and consider the pleadings and affidavits submitted in support of and in opposition to the motion, accepting as true evidence favorable to the plaintiff and evaluate the defendant's evidence to determine whether it defeats the plaintiff's evidence as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)

*Silva's Causes of Action Arose out of the Unlawful Detainer Action*

Defendants claim the present causes of action arose out of the earlier unlawful detainer action. "'The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16.' [Citations.]" (*Feldman v. 1100 Park Lane Associates*, *supra*, 160 Cal.App.4th at p. 1479.) Consequently, the first step in our analysis is to determine whether each of Silva's causes of action arose out of the unlawful detainer action. (See *City of Cotati v. Cashman*, 29 Cal.4th at p. 78.) In the anti-SLAPP context, a cause of action arises from protected activity if the action is "*based on*" such activity. (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89.) The mere fact that an unlawful detainer may have "'preceded' or 'triggered'" the instant lawsuit is not enough; the issue is whether the unlawful detainer action was the "'basis' or 'cause' of that suit." (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1289.)

The breach of contract cause of action alleged a partly written, partly oral contract was breached when the unlawful detainer action was filed. The written provision provided for a one-year lease. Silva alleged the oral portion of the lease consisted of a representation by Carl that Silva could remain on the property as long as he desired, provided he met his other contractual obligations under the lease—presumably payment of rent and making the listed improvements at no cost to John and Mary. Under the circumstances alleged in the complaint, the breach of contract action arose out of the unlawful detainer action. (*Feldman v. 1100 Park Lane Associates*, *supra*, 160 Cal.App.4th at pp. 1483-1484 [breach of contract claim based on unlawful detainer subject to section 425.16].)

Silva's fraud cause of action alleges the defendants had no intention of fulfilling Carl's promise to let him remain in possession of the property as long as he desired. Again, that alleged representation was conditioned on Silva making the listed repairs and improvements at no expense to John and Mary, and implicitly based on Silva

6

paying the rent. An action for fraud has five elements: "'[1] a misrepresentation . . . ; [2] knowledge of its falsity. . . ; [3] intent to defraud, i.e., to induce reliance; [4] justifiable reliance; and [5] resulting damage.'" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The damage purportedly suffered by Silva was being dispossessed of the property.

The stipulated judgment in the unlawful detainer matter included an award of damages to John in the amount of $7,500 for rent and damages owed by Silva. Although the alleged fraud occurred in 2008 when the lease was signed, without the existence of the unlawful detainer action and the judgment entered therein, Silva would have no cause of action for fraud, not only because he would have no evidence upon which he could hang his allegation of fraudulent intent, but also because he would not have suffered any damages. Consequently, we find his cause of action for fraud arose out of the unlawful detainer action.

The same is true of Silva's causes of action for quantum meruit and unjust enrichment. The gist of each is that defendants benefited from the improvements made by Silva without his being justly compensated. As the compensation he claims was due—his continued possession of the property—was frustrated and eliminated *solely* by the unlawful detained action, we find these actions also arose out of the unlawful detainer action.

Silva conceded at oral argument, and we agree, the retaliatory eviction cause arose out of the unlawful detainer action. Having found all of Silva's action arose out of the unlawful detainer action and thus, section 425.16 applies in this matter, we turn to the second inquiry: whether Silva demonstrated a probability of prevailing on his claims. (*Jarrow Formulas, Inc. v. La Marche*, *supra*, 31 Cal.4th at p. 733.)

7

*Silva did not Demonstrate a Probability of Prevailing*

As stated above, once a defendant establishes a cause of action arose from protected activity, the section 425.16 special motion to strike must be granted unless the plaintiff demonstrates a probability of prevailing on his or her claim if the matter were to proceed to trial. (§ 425.16, subd. (b)(1).) To carry this burden, a plaintiff must present "'competent and admissible evidence.'" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.) Allegations in the complaint are insufficient (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010) and "declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded. [Citation.]" (*Gilbert v. Sykes*, *supra*, 147 Cal.App.4th at p. 26.)

Silva failed to introduce evidence demonstrating a likelihood of prevailing on the merits of any of his claims. First, although Silva averred that Carl said he could remain in the property as long as he desired, assuming he made the listed repairs and improvements, the lease prepared by Silva stated the term of the lease was for one year with an "option for additional years," which Silva did not exercise. The term of the lease expired in August 2009, and there was no evidence demonstrating the parties agreed to any additional one-year terms. Silva's payment and John's acceptance of rent after the lease term expired did not operate to extend the term of the lease. Rather, it merely converted Silva's tenancy to a month-to month tenancy. (Civ. Code, § 1945.) Therefore, even were we to assume Carl's purported representation became part of the lease, Silva did not demonstrate he exercised the option to extend the term of the lease.

Second, the unlawful detainer complaint alleged Silva owed John $6,000 in past due rent. Silva stipulated in the unlawful detainer judgment that he owed John $7,500 in back rent and damages. This evidence demonstrated Silva was not in compliance with the conditions attached to Carl's purported promise to permit Silva to

8

remain as long as he desired. Consequently, Silva failed to establish he was likely to prevail on his breach of contract action.

Neither did Silva show he was likely to prevail on his fraud cause of action. Even under Silva's version of Carl's purported representation, Silva was obligated to remain current in his payment of rent. Having failed to do so, Silva is not free to insist that he be permitted to remain in possession of the property. Moreover, John permitted Silva to remain in the property for *years* after the term of the lease prepared by Silva expired without having been renewed. Additionally, Silva introduced no evidence that when Carl purportedly made the statement to him about staying as long as he liked, Carl was not being truthful. The fact that John finally decided to retake possession of the property years after the lease ended does not fill in that evidentiary gap.

"The elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.' [Citation.] 'The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched.' [Citation.]" (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1132.) According to Silva's declaration, he made a number of improvements and repairs to the property. However, according to the lease and John's declaration, which are not inconsistent with Silva's declaration, John gave Silva a discount on the rent because Silva promised to make the repairs and improvements. The one-year term of the lease ended in 2009, and although John and Silva did not extend the term of the lease, John permitted Silva to remain in possession of the property for an additional 35 months, presumably with the discounted rent. Accordingly, we cannot say Silva demonstrated he was likely to prevail on his unjust enrichment claim.

"Quantum meruit is a Latin phrase meaning 'as much as he deserves,' and is based on the idea that someone should get paid for beneficial goods or services which

9

he or she bestows on another." (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 445, fns. omitted.) Quantum meruit is a quasi-contractual remedy (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419) based on "the law's distaste for unjust enrichment" (*Maglica v. Maglica*, *supra*, 66 Cal.App.4th at p. 449). However, as stated above, Silva did not demonstrate a likelihood he could show defendants were unjustly enriched. Additionally, there is no reason to apply the equitable remedy of quantum meruit "when the parties have an actual agreement covering compensation. [Citations.]" (*Hedging Concepts, Inc. v. First Alliance Mortage Co.*, *supra*, 41 Cal.App.4th at p. 1419.) There was such an agreement here. It was the lease and, as drafted by Silva himself, it not only stated he would have possession of the property for a one-year period (with an option for additional years) *if* he made the listed repairs, improvements, and paid $2,000 a month, it also provided the improvements were to be made "at no cost to" John and Mary. Silva was not likely to prevail on his quantum meruit claim if it proceeded to trial.

Silva also failed to prove he was likely to prevail on his retaliatory eviction claim. John's declaration stated he and Mary "had not received any noise complaints from Mr. Silva for the two years prior to the time" they served Silva with the notice to vacate, and that their decision to retake their property almost four years after initially leasing it to Silva was not motivated by any prior complaints by Silva. Silva claimed he made written complaints about a noisy tenant in the adjacent unit from January 2009 through August 2012. He attached to his declaration copies of letters and e-mails he wrote during that period, including e-mails he wrote to Carl. That documentation confirms John's statement and shows the complaints about the neighbor ended approximately two years before the eviction effort began and resumed months *after* eviction proceedings began. A two-year lapse between a tenant's complaint and the landlord's initiation of eviction proceedings does not lend itself to an inference the

10

eviction was retaliatory in nature. (See Civ. Code, § 1942.5, subd. (a) [180-day timeframe].) There is no reason to believe Silva was likely to prevail on his retaliatory eviction cause of action.

Because we find Silva failed to present evidence showing he would likely prevail on his claims were the matter to proceed to trial, we need not address defendants' argument concerning whether Silva is precluded from making the requisite showing due to principles of res judicata. We note, however, that despite the fact an unlawful detainer action is a summary proceeding and cross-complaints as to issues that do not go to the issue of possession are not permitted (*S.P. Growers Assn. v. Rodriguez* (1976) 17 Cal.3d 719, 723; see also *Barela v. Superior Court* (1976) 30 Cal.3d 244, 254 [retaliatory eviction defense would not be significantly impair summary nature of unlawful detainer actions]), Silva raised as affirmative defenses in the unlawful detainer action his right to remain in possession of the property because (1) he made the listed repairs and improvements and (2) the eviction was retaliatory. After raising these issues, Silva abandoned them by stipulating to a judgment returning the property to John and awarding John damages for the nonpayment of rent. (See *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664, fn. 2, 667 ["stipulated judgment bars subsequent litigation of all issues which were or could have been raised in the original suit"].)

*Attorney Fees*

The trial court awarded John and Mary attorney fees in prevailing on their motion to strike pursuant to section 425.16. Silva challenged the award, arguing only that the attorney fee award would have to be reversed if we reverse the underlying order striking his complaint. As we affirm the trial court's ruling on the motion to strike, we have no occasion to reverse the award of attorney fees.

11

### III

### DISPOSITION

The orders and judgment of the superior court are affirmed.  John and Mary shall recover their costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.