[No. B145698. Second Dist., Div. Seven. Mar. 17, 2003]

ARMANDO V. MORENO et al., Plaintiffs and Appellants, v.
DERIC SANCHEZ, Defendant and Respondent.

## Counsel

Harold M. Stanley for Plaintiffs and Appellants.

Law Offices of Robert A. Brown and Robert A. Brown for Defendant and Respondent.

## Opinion

**JOHNSON, J.**—Buyers brought suit against a home inspector for failing to discover and report certain defects in the house they ultimately purchased. The trial court sustained without leave to amend the inspector's demurrer to

the buyers' second amended complaint. The court found the one-year statute of limitations specified in the home inspection contract barred all causes of action whether sounding in tort or contract.

We conclude one year *from the date of the inspection* can be an unreasonably short period of time to discover a home inspector's breach. Accordingly, we hold a cause of action against a home inspector accrues when the buyer discovers, or through the exercise of reasonable diligence should have discovered, the breach. We also conclude a home inspector is not immune from tort liability. We thus remand to the trial court with directions to vacate the dismissal and to overrule the demurrer.

## FACTS AND PROCEEDINGS BELOW

This is an appeal from a judgment dismissing the buyers' complaint following the sustaining of the home inspector's demurrer without leave to amend. For purposes of appeal, we thus accept as true the properly pleaded factual allegations of the complaint.[1]

In 1998, appellants Armando V. Moreno and Gloria Contreras (sometimes collectively buyers) began looking for a new home. They visited a property at 8671 Enramada Avenue in Whittier. The property was then 49 years old. Between July and August 1998, they visited the property at least six times. The buyers presented an offer to buy the house. The sellers initially accepted their offer. However, the sellers changed their mind once they learned Moreno was an attorney, court commissioner and licensed real estate broker. The buyers threatened suit. In response, the sellers hired counsel. After some negotiation, the parties agreed to a new purchase and sale agreement on August 12, 1998. The contract specified the buyers had seven days after acceptance to inspect the property.

With the signed offer, the buyers received the sellers' disclosure statement and its one page supplement. As relevant to this appeal, the sellers disclosed "significant defects" with the walls, ceilings, flooding and drainage. The sellers noted, "settling as evidenced by some cracks in the walls and ceilings." They also noted water had seeped into the basement on several occasions, and that drainage in the northwest corner of the property was limited.

The buyers hired respondent Deric Sanchez, doing business as Aaero Spec Quality Home Inspectors, to inspect the property before their purchase. The

---

[1] *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].

inspector asked Moreno to sign and initial two clauses on the preprinted home inspection contract. The first was a liquidated damage clause limiting the inspector's liability. The second clause provided any lawsuit, sounding in either contract or tort, had to be filed within a year from the date of the inspection. The contract noted, "This time period is shorter than otherwise provided by law." Moreno negotiated with respondent regarding these clauses. The inspector agreed to strike the liquidated damage clause but would not agree to strike the statute of limitations clause.

The contract specified the home inspection was limited to a visual inspection of the general systems and components of the home to identify "any system or component listed in the report which may be in need of immediate major repair." The contract described matters, "not exposed to view," "concealed" or "inaccessible" as outside the scope of inspection. In addition, and as relevant to this appeal, the inspection contract specifically excluded, whether or not concealed, soil conditions and asbestos.

The inspector conducted his inspection between 4:00 and 6:00 p.m. on August 18, 1998. Moreno and one of the sellers accompanied the inspector during the inspection.

In small print on the page discussing the air conditioning and heating system the form inspection report notes "Asbestos materials have been commonly used in heating systems.* Determining the presence of asbestos can ONLY be performed by laboratory testing and is beyond the scope of this inspection.*" The legend on the contract explains the asterisk "signifies items that may warrant attention/repair."

As a result of inspecting the heating and cooling system, the inspector suggested the buyers contract with a licensed expert to clean out the entire system, including the filters. On the other hand, the inspector noted the heating ducts were "serviceable." He did not mark the box on the report indicating he had discovered any "asbestos-like materials."

Escrow closed on October 8, 1998. The buyers moved into the property at the end of October or early November. In his original inspection report the inspector stated the foundation had no anchor bolts. In November 1998, he returned to the home to discuss retrofitting the foundation. During this visit the inspector discovered the foundation did in fact have anchor bolts. Moreno and Contreras assert the inspector amended the original inspection report to correct this error.

In December 1998, both buyers began feeling ill. Moreno was ill for one week in December and Contreras was sick for two weeks in December.

Thereafter Contreras's illness became chronic. She began to suffer nose-bleeds. In late August or early September 1999, a culture revealed she had a bacterial infection.

In September 1999, the buyers hired licensed engineers to test the air quality of the residence. An environmental firm discovered heating and air conditioning air ducts located in the crawl space in the basement were insulated with asbestos and covered over with another material. According to the complaint, the company noticed pieces of asbestos lying on the basement floor. Laboratory tests of the air quality of the home did not detect any friable asbestos.

The buyers hired another company which specialized in central heating and cooling systems. This firm discovered, among other things, an unsealed air return which permitted the unit to draw dust, dirt and rust into the system. It also discovered dirt, dust and debris in the main return, which permitted dust and dust mites to be distributed through the system and into the home.

In addition to the discovery of asbestos and dust, the buyers learned (1) the northwest yard drain was inoperable, causing water to pond under the structure; (2) 21 windows had been nailed or painted shut; and (3) the property was built on expansive soil, causing interior and exterior walls to crack.

The buyers filed suit on October 19, 1999, against the sellers and the inspector.[2] Because Moreno was a court commissioner for the County of Los Angeles, the matter was transferred to Orange County for hearing purposes.

In their second amended, and operative, complaint the buyers alleged causes of action against the inspector for breach of contract, negligence and negligent misrepresentation. The inspector demurred, claiming the buyers could not validly transform a breach of contract action into a tort cause of action, and even if they could, all claims whether sounding in contract or tort, were barred by the one-year statute of limitations provided in the home inspection contract.

The buyers filed opposition, arguing among other things, the one-year statute of limitations was unreasonable and thus the discovery rule should apply in this instance.

---

[2]The sellers are not parties to this appeal.

The inspector countered with a backup argument. Assuming the complaint stated valid causes of action for contract as well as tort, and even if the discovery rule applied, all causes of action were nevertheless barred by the express exemptions in the contract for matters relating to asbestos, soil condition, and air quality.

Ultimately the trial court ruled the one-year statute of limitations was reasonable in this case and thus presented a bar to prosecution of each of the causes of action alleged against the inspector. The court rejected the buyers' argument that causes of action under the contractual one-year statute of limitations should not begin to accrue until the homeowner discovered, or through the exercise of reasonable diligence, should have discovered, the home inspection had been negligently performed.[3] Accordingly, the court sustained the inspector's demurrer without leave to amend and dismissed the complaint.

The court subsequently granted the inspector's request for contractual attorney fees and costs as the prevailing party in the action. This appeal followed.

## DISCUSSION

### I. Standard of Review of a Judgment of Dismissal After the Trial Court Sustains a Demurrer Without Leave to Amend.

■ Because we are reviewing a judgment of dismissal after the trial court sustained a demurrer to the operative complaint without leave to amend, we " 'treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 [172 P.2d 867].) When

---

[3]The trial court explained: "My personal feeling is . . . building inspectors really don't fall in the same public-policy circles as lawyers and doctors, possibly architects, particularly when they are sued for malpractice, and it would be something of an extension, as I see it, to put them there just at the trial court level. [¶] As I say, since it is closer to a policy question than a matter of simply interpreting the legal jurisprudence, I am not in the policy business; I'm just a lower-level county trial judge . . . . So to the extent that the plaintiffs want me to extend the public-policy argument to cover building inspectors, I am just going to stay out of that business. I am not going to do it."

a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (See *Hill* v. *Miller* (1966) 64 Cal.2d 757, 759 [51 Cal.Rptr. 689, 415 P.2d 33].) And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 781 [180 Cal.Rptr. 657, 640 P.2d 793]; *Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].) The burden of proving such reasonable possibility is squarely on the plaintiff. (*Cooper* v. *Leslie Salt Co., supra,* at p. 636.)"[4] Because the trial court's determination is made as a matter of law, we review the ruling de novo.[5]

## II. *The Delayed Discovery Rule Properly Applies to Actions Against Home Inspectors for Important Policy Reasons.*

■ Under the general rule, a cause of action accrues when the wrongful act is done and not when a plaintiff discovers he or she has a cause of action to pursue.[6] In this case the alleged harm occurred on the date of the inspection. However, "[t]he harshness of this rule has been ameliorated in some cases where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured."[7] Accordingly, "a cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action . . . ; this has been interpreted under the discovery rule to be when 'plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence.' "[8]

A number of statutes specifically provide for delayed accrual of a cause of action until the discovery, or the opportunity to discover, the facts constituting the cause of action.[9] Most notable among these are situations involving fraud or mistake.[10] ■ Meanwhile judicial decisions have declared the discovery rule applicable in situations where the plaintiff is unable to see or appreciate a breach has occurred. These sorts of situations typically involve

---

[4]*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].

[5]*Berry v. City of Santa Barbara* (1995) 40 Cal.App.4th 1075, 1082 [47 Cal.Rptr.2d 661].

[6]*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421].

[7]*Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 406 [163 Cal.Rptr. 711].

[8]*Leaf v. City of San Mateo, supra,* 104 Cal.App.3d 398, 407, citations and italics omitted.

[9]See statutes collected in 3 Witkin, California Procedure (4th ed. 1996) Actions, section 463, pages 583-584.

[10]Code of Civil Procedure section 338, subdivision (d).

underground trespass,[11] negligently manufactured drugs,[12] products liability,[13] violations of the right of privacy,[14] latent defects in real property,[15] or breaches of contract committed in secret.[16]

 Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary, confidential or privileged relationship. Employing this rationale, the discovery rule has been applied, sometimes by statute and sometimes through judicial decisions, to claims against professionals such as trustees,[17] stockbrokers,[18] escrow agents,[19] insurance agents,[20] accountants,[21] physicians,[22] attorneys,[23] and title companies.[24]

However, justification for the discovery rule has not been restricted to regulated and licensed professions. Courts have also employed the rule of delayed accrual in cases involving tradespeople who have held themselves out as having a special skill, or are required by statute to possess a certain level of skill.

In *Evans v. Eckelman*[25] the court noted the rationale behind applying the discovery rule against professionals applied with equal force to trades people who represent they have the level of skill and expertise necessary to perform a specialized service for the consuming public. "An action for professional malpractice, for example, typically involves the professional's failure to

[11]See, e.g., *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127].

[12]See, e.g., *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923].

[13]See, e.g., *G. D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22, 25 [122 Cal.Rptr. 218].

[14]See, e.g., *Cain v. State Farm Mut. Auto Ins. Co.* (1976) 62 Cal.App.3d 310, 315 [132 Cal.Rptr. 860].

[15]See, e.g., *Allen v. Sundean* (1982) 137 Cal.App.3d 216, 222 [186 Cal.Rptr. 863].

[16]See, e.g., *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 832 [195 Cal.Rptr. 421].

[17]See, e.g., *Cortelyou v. Imperial Land Co.* (1913) 166 Cal. 14, 20 [134 P. 981].

[18]See, e.g., *Twomey v. Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690 [69 Cal.Rptr. 222].

[19]See, e.g., *Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 534 [25 Cal.Rptr. 65, 375 P.2d 33].

[20]See, e.g., *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 596-598 [83 Cal.Rptr. 418, 463 P.2d 770]; *Walker v. Pacific Indem. Co.* (1960) 183 Cal.App.2d 513, 516-517 [6 Cal.Rptr. 924].

[21]See, e.g., *Moonie v. Lynch* (1967) 256 Cal.App.2d 361, 365-366 [64 Cal.Rptr. 55].

[22]See, e.g., *Huysman v. Kirsch* (1936) 6 Cal.2d 302, 312-313 [57 P.2d 908].

[23]See, e.g., *Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d 176, 187.

[24]See, e.g., *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1248 [78 Cal.Rptr.2d 566].

[25]*Evans v. Eckelman* (1990) 216 Cal.App.3d 1609 [265 Cal.Rptr. 605].

apply his or her specialized skills and knowledge. 'Corollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it.' (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d at p. 188.) The same rationale has been adopted where defendant held itself out or was required by law to be specially qualified in a trade. (*Allred* v. *Bekins Wide World Van Services* [(1975)] 45 Cal.App.3d [984,] 990-991 [120 Cal.Rptr. 312]; *Seelenfreund* v. *Terminix of Northern Cal., Inc.* [(1978)] 84 Cal.App.3d [133] at pp. 137-138 [148 Cal.Rptr. 307].)"[26]

These two last mentioned decisions are most closely analogous to the situation in the present case. In *Seelenfreund v. Terminix of Northern Cal., Inc.*[27] a purchaser of real property brought an action against a licensed termite inspection company for negligent breach of an oral contract to inspect and report on termite infestation in a property the purchaser contemplated buying.[28] Another termite inspection two years later revealed a number of problems which should have been discovered two years earlier in the first inspection. A year later the purchaser brought an action against the termite inspection company. The company demurred, claiming the two-year statute of limitations for oral contracts barred the action as a matter of law.[29] The purchaser agreed the two-year statute of limitations applied, but argued the statute did not begin to run until he discovered the termite inspection company's breach of duty.

Relying on the Supreme Court's decision in *Neel*, the *Seelenfreund* court described the reasons supporting delayed accrual in professional malpractice actions. "*First*, a professional is bound by a special duty not merely to perform one's work with ordinary care but to use the skill, prudence and diligence commonly exercised by one's professional peers. Corollary to this first consideration is the inability of a lay client to recognize the negligence of a professional. *Second*, a client may not even have the opportunity to observe the negligent conduct of a professional. *Third*, all of the professionals who are subject to the rule of accrual upon discovery occupy a fiduciary relationship with respect to their clients. . . ."[30]

The court acknowledged the service contract between the termite inspector and the homeowner did not create a fiduciary relationship.[31] However, it found the specialized knowledge and skill required of a termite inspector to

---

[26]*Evans v. Eckelman, supra*, 216 Cal.App.3d 1609, 1615.

[27]*Seelenfreund v. Terminix of Northern Cal., Inc., supra*, 84 Cal.App.3d 133.

[28]*Seelenfreund v. Terminix of Northern Cal., Inc., supra*, 84 Cal.App.3d 133, 135.

[29]*Seelenfreund v. Terminix of Northern Cal., Inc., supra*, 84 Cal.App.3d 133, 136.

[30]*Seelenfreund v. Terminix of Northern Cal., Inc., supra*, 84 Cal.App.3d 133, 137.

[31]*Seelenfreund v. Terminix of Northern Cal., Inc., supra*, 84 Cal.App.3d 133, 137.

be essentially its equivalent. The court pointed out the Legislature deemed it necessary to regulate the field of pest control, as it had other specialized practitioners serving the public. It thus enacted numerous statutes detailing standards of practice for the pest control industry, including statutes controlling the qualifications and licensing requirements for each of the three branches of pest control. The court found, in light of the specialized knowledge required of a person engaged in termite inspection and control, a lay person, "could, with justification, be ignorant of his right to sue at the time the termite inspection was negligently made and reported; . . ."[32] Accordingly, the court held delayed accrual in actions involving termite inspections "vindicate[d] the statutory duty to [accurately] report."[33]

In *Allred v. Bekins Wide World Van Services*,[34] an employee completed a construction project in Pakistan and his employer agreed to have his family's personal effects packed and shipped back to the United States.[35] The worker's employer contracted with Bekins Wide World Services for these services. Bekins packed their personal belongings in straw which, according to the plaintiffs' complaint, was 'stained and rancid and smelled of animal urine.' "[36] Soon after their property arrived in the United States, the employee's family members developed a serious rash, itching sensation and skin irritation. Two years or more after their belongings left Pakistan the worker's family learned the cause of their injuries was " 'microscopic vermin which lived and bred in the packing straw.' "[37] The worker's family filed suit about 46 months after the alleged improper packing, and about 20 to 24 months after they learned the cause of their personal injuries and property damage.

The court found Bekins's agreement to provide services imposed a duty on Bekins to exercise reasonable care in undertaking the packing and shipping project and that its failure to do so gave rise to a tort cause of action. "The purpose of Bekins' contract with the employers was the delivery of the Allred family's goods to their home in the United States. In this undertaking Bekins was bound, as a matter of law, to use at least reasonable care and skill. [Citations.] And: ' "[N]egligent failure to observe [such] conditions is a tort, as well as a breach of the contract." The rule which imposes this duty is of universal application as to all persons who by contract undertake professional or other business engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law and

---

[32]*Seelenfreund v. Terminix of Northern Cal., Inc., supra*, 84 Cal.App.3d 133, 138-139.

[33]*Seelenfreund v. Terminix of Northern Cal., Inc., supra*, 84 Cal.App.3d 133, 139.

[34]*Allred v. Bekins Wide World Van Services, supra*, 45 Cal.App.3d 984.

[35]*Allred v. Bekins Wide World Van Services, supra*, 45 Cal.App.3d 984, 987.

[36]*Allred v. Bekins Wide World Van Services, supra*, 45 Cal.App.3d 984, 987.

[37]*Allred v. Bekins Wide World Van Services, supra*, 45 Cal.App.3d 984, 987.

need not be stated in the agreement . . . .' (*Roscoe Moss Co.* v. *Jenkins* [(1942) 55 Cal.App.2d 369, 376 [130 P.2d 477]].)"[38]

The court next considered when the employee's family's causes of action accrued. Analogizing to the Supreme Court's decision in *Neel,* which first adopted the discovery rule for attorney malpractice, the court concluded the discovery rule similarly applied where a defendant held itself out as specially qualified in a trade. "It was incidentally pointed out in *Neel* v. *Magana, etc., supra* (6 Cal.3d, p. 188, fn. 21), that the same duty of care applicable to a 'profession' is required where one undertakes to render services in the practice of a '*trade.*' (Italics added.) Reference was there made to Restatement Second of Torts section 299A, stating: 'Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.' (And see *Roscoe Moss Co.* v. *Jenkins, supra,* 55 Cal.App.2d 369, 376.)"[39]

Because Bekins Wide World Services held itself out as "qualified and equipped" to pack and ship articles of personal property around the world, the court concluded the discovery rule applied equally to this service oriented trade as it did to attorney malpractice.[40]

These same considerations are present in the home inspection context as well. For many people, purchasing a residence is the single biggest investment they make in their lives. Most want as much information as possible about a property before purchasing. However, few have the knowledge or experience necessary to fully analyze the quality of a home's structure, systems or components themselves. Fewer still are also structural engineers, general contractors, electrical contractors or the like. It is precisely because most people lack the necessary skills to recognize potential defects on their own that prospective homeowners hire a home inspection company in the first instance. For a fee they entrust this responsibility to a person who represents he has sufficient knowledge, skill and expertise to discover and report on the material defects in a given property. These potential homeowners look to the professional to guide and inform their choice about a given residence, not only to learn of existing material defects, but also about other potentially serious flaws which require further investigation. However, because most people are ill-equipped to know whether the home inspector in fact discovered and reported all the material defects with the home, most

[38]*Allred* v. *Bekins Wide World Van Services, supra,* 45 Cal.App.3d 984, 989.
[39]*Allred* v. *Bekins Wide World Van Services, supra,* 45 Cal.App.3d 984, 991.
[40]*Allred* v. *Bekins Wide World Van Services, supra,* 45 Cal.App.3d 984, 991.

homeowners will not recognize a problem has been overlooked, or noticed but not reported, until something goes wrong and the damage becomes apparent. Needless to say, a faulty home inspection can have disastrous financial consequences for many homeowners.

For this reason the Legislature in 1996 adopted legislation to govern the standard of care and practices for the home inspection industry "to assure that consumers of home inspection services can rely upon the competence of home inspectors."[41] To this end the Legislature adopted a standard of care applicable to home inspectors not otherwise licensed in a related trade. Section 7196 of the Business and Professions Code provides: "It is the duty of a home inspector who is not licensed as a general contractor, structural pest control operator, or architect, or registered as a professional engineer to conduct a home inspection with the degree of care that a reasonably prudent home inspector would exercise." In the event the home inspector is licensed in one of these fields, and acts in that capacity, then he or she is bound to use the degree of skill and knowledge as is required of those professions or trades in conducting the home inspection.[42]

In short, situations involving home inspectors share many characteristics with those involving other professionals in which delayed accrual has been recognized as appropriate and necessary. Although not as regulated as some fields, the Legislature has recognized the significance of the role home inspectors occupy in this state's economy,[43] as well as the potential hazards of fraudulently or negligently performed inspections.[44] As with other forms of professional malpractice, specialized skill is required to analyze a residence's structural and component parts. ■ Because of the hidden nature of these systems and components a potential homeowner may not see or recognize a home inspector's negligence, and thus may not understand he has been damaged until long after the inspection date. This fact, coupled with the trust the potential homeowners must necessarily place in the professional home inspector, compel the conclusion causes of action for breach of a home inspector's duty of care should accrue in all cases, not on the date of the inspection, but when the homeowner discovers, or with the

[41]Statutes 1996, chapter 338 (Sen. Bill No. 258 (1995-1996 Reg. Sess.)) section 1, statement of legislative intent.

[42]Business and Professions Code section 7196.

[43]In 1996 the California Association of Realtors sponsored the legislation governing home inspection services. At that time the association informed the Legislature more than 500,000 home sales occurred in California each year, representing in excess of $9 billion investment in housing.

[44]See Business and Professions Code sections 7197 (proscribing certain unfair business practices), 7198 (declaring contractual provisions against public policy which purport to waive the inspector's duty of care or which limit the inspector's liability to the cost of preparing the report).

exercise of reasonable diligence should have discovered, the inspector's breach.

The delayed discovery rule is founded on important public policy considerations. In fact, these considerations are sufficient to overcome ordinary statutory time limits the Legislature has enacted. That is, the Legislature may have created a one-year statute of limitations for a certain cause of action. But if the courts determine the cause of action arises in circumstances where the delayed discovery rule applies, plaintiffs can file suit years after the expiration of the one-year statutory limitations period, assuming it takes that long to discover their cause of action. If a legislated limitations period must yield to a judicially created delayed discovery rule, how can it be argued a contractually agreed-upon limitations period is immune from that rule and its underlying rationale?[45]

This leads to the question whether any court has allowed a contractual provision to defeat the policy behind the discovery rule, that is, to substitute the date of injury for the date of discovery as the accrual date for a cause of action, in circumstances where the discovery rule would ordinarily apply. That question is discussed in the next part.

III. *In Those Situations Where the Discovery Rule Applies, No Prior Case Authority Has Permitted Defendants to Avoid the Rule Through Contractual Provisions Substituting the Date of the Injury Rather Than Discovery of That Injury as the Accrual Date for Purposes of the Statute of Limitations.*

Under general California law a person has four years to bring an action on a contract.[46] California law also provides for a statute of limitations specifically applicable to home inspections. The Business and Professions Code similarly provides up to four years to bring suit for breach of a home inspector's duty to use the degree of care a reasonably prudent home inspector would exercise.[47] These four-year periods supply home purchasers a reasonable amount of time to discover a home inspector's breach and to file suit.

As the dissent correctly observes, the Legislature did not itself provide for a rule of delayed discovery when it enacted the four-year outside limitations

---

[45]Even assuming a homeowner could waive the benefits of the discovery rule, it would have to be a knowing waiver. The contract itself would have to apprise the homeowner of the existence of his or her right to the discovery rule, and what that meant, and required him or her to expressly waive that right. Nothing approaching such a knowing waiver occurred here.

[46]Code of Civil Procedure section 337.1.

[47]Business and Professions Code section 7199 provides the time to bring an action against a home inspector for "breach of duty arising from a home inspection report shall not exceed four years from the date of the inspection."

period for actions against home inspectors. We can attach no special significance to this fact. Legislative adoption of delayed discovery has often come only in response to such judicially created rules. For example, the Legislature enacted Code of Civil Procedure section 340.6 providing for delayed discovery for attorney malpractice actions in 1977, years after the Supreme Court's decision in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,[48] recognizing for the first time the propriety of the rule in the legal malpractice context. Similarly, the Legislature did not create a statutory rule of delayed discovery in the medical malpractice context until 1970,[49] and long after the Supreme Court judicially recognized such a rule in *Huysman v. Kirsch*.[50] The Legislature's provision in this instance for an outside maximum limitation period is entirely consistent with other delayed discovery statutes as a mechanism to ensure the limitations period does not continue for infinity.

It is true California courts have afforded contracting parties considerable freedom to modify the length of a statute of limitations.[51] ▮ Courts generally enforce parties' agreements for a shorter limitations period than otherwise provided by statute, provided it is reasonable. "Reasonable" in this context means the shortened period nevertheless provides sufficient time to effectively pursue a judicial remedy. "It is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way. [Citations.]"[52]

However, a contractually shortened limitations period has never been recognized outside the context of straightforward transactions in which the triggering event for either a breach of a contract or for the accrual of a right is immediate and obvious. Moreover, no decision upholding the validity of a contractually shortened limitation period has done so in the context of an action against a professional or skilled expert where breach of a duty is more difficult to detect. Instead, most reported decisions upholding shortened periods involve straightforward commercial contracts plus the unambiguous breaches or accrual of rights under those contracts.

---

[48]*Neel v. Magana, Olney, Levy Cathcart & Gelfand, supra*, 6 Cal.3d 176.
[49]Code of Civil Procedure section 340.5. ·
[50]*Huysman v. Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908].
[51]See, e.g., *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1548 [46 Cal.Rptr.2d 33] (court enforced choice of law provision in parties' contract which provided for a shorter statute of limitations than California's).
[52]*Beeson v. Schloss* (1920) 183 Cal. 618, 622-623 [192 P. 292].

For example, in *Tebbets v. Fidelity and Casualty Co.*[53] death triggered the statute of limitations for actions for benefits under the accident-life insurance policy. The insurance policy specified all actions for death benefits had to be brought within six months from the date of death. The six-month limitations period in this context was not unreasonable.[54]

In *Beeson v. Schloss,*[55] receipt of a detailed statement of commissions earned was the triggering event for actions for unpaid sales commissions. The court found six months from receiving this written statement providing the necessary information a sufficient time to bring an action for unpaid commissions.[56]

*Fageol Truck & Coach Co. v. Pacific Indem. Co.*[57] involved an insurance contract. The contract had a one-year statute of limitations to report the loss of a truck, a matter a trucking company would realize the moment it occurred.

*Hubbard v. Matson Nav. Co.*[58] concerned a plaintiff's personal injuries sustained in a fall from her ship berth. The conclusion of the trip fixed the accrual date for actions against the steamship company for any loss, damage, injury or delay involving the trip, an event about which any passenger would be aware.

*Capehart v. Heady*[59] involved a tenant/landlord dispute. The landlord's notice to quit was the event that triggered the three-month period within which the tenant could file suit against the landlord.[60]

*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.*[61] technically did not involve a contractual provision shortening the statute of limitations for breach of contract to a time less than provided by statute. Instead, the court enforced the parties' choice of law provision stating Delaware law controlled the parties' contract for the sale of securities, which provided the parties a full three years to bring suit.

---

[53]*Tebbets v. Fidelity and Casulaty Co.* (1909) 155 Cal. 137 [99 P. 501].
[54]*Tebbets v. Fidelity and Casualty Co., supra,* 155 Cal. 137, 139.
[55]*Beeson v. Schloss, supra,* 183 Cal. 618.
[56]*Beeson v. Schloss, supra,* 183 Cal. 618, 622-624.
[57]*Fageol Truck & Coach Co. v. Pacific Indem. Co.* (1941) 18 Cal.2d 748, 753 [117 P.2d 669].
[58]*Hubbard v. Matson Nav. Co.* (1939) 34 Cal.App.2d 475, 476-477 [93 P.2d 846].
[59]*Capehart v. Heady* (1962) 206 Cal.App.2d 386 [23 Cal.Rptr. 851, 6 A.L.R.3d 1190].
[60]*Capehart v. Heady, supra,* 206 Cal.App.2d 386, 388.
[61]*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc., supra,* 38 Cal.App.4th 1532, 1548.

In short, none of these decisions upholding parties' "freedom to modify the length of the statute of limitations,"[62] is factually analogous to the case at bar. Nor do any of them involve a cause of action to which the delayed discovery rule applies. In each of the foregoing decisions the plaintiffs knew of the breaches or the accrual of rights at the moment the cause of action accrued. It was thus appropriate in those situations to permit the limitations period to run from the moment of the triggering event. In the present context, by contrast, a cause of action may not be known, or even suspected, until long after the home inspection is completed. A shortened limitations period in this context may thus foreclose an effective judicial remedy for many homeowners. ■ For this reason, for a provision in a home inspection contract shortening the statute of limitations to be enforceable, we hold accrual of a cause of action occurs not with the inspection, but when the homeowner discovers, or through the exercise of reasonable diligence should have discovered, the breach.

The dissent asserts a one-year statute of limitations as measured from the date of inspection is "consistent with" Business and Professions Code section 7199, providing time to bring an action for "breach of duty arising from a home inspection report shall not exceed four years from the date of the inspection." This may be so. However, it also begs the question whether a contractual provision both shortening the statute of limitations otherwise applicable to a home inspector's breach, and opting out of the discovery rule by measuring accrual from the date of inspection, can ever be consistent with the public policy considerations that call for applying the discovery rule in the first instance.

It is one thing to say a contract can shorten the time period for filing a lawsuit after the lawsuit has accrued. It is quite another to say a contract can redefine when accrual occurs—especially when public policy has defined that triggering event as the plaintiff's *discovery* of his cause of action—not the date the defendant committed the acts that gave rise to that cause of action.

Indeed if courts were to enforce consumers' contractual waiver of their rights under the delayed discovery rule in contracts between home inspectors and homebuyers, why not when the contracts are between lawyers and clients, physicians and patients, and in every other professional and trade relationship currently subject to that rule? In all these situations, including home inspection transactions, the supplier of services nearly always enjoys a knowledge and bargaining advantage over the consumer. So it should not

---

[62]*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.*, supra, 38 Cal.App.4th 1532, 1548.

prove difficult to include such provisions in most if not all such contracts. Yet, our research has not uncovered a single appellate case where a lawyer or physician or anyone else subject to the delayed discovery rule has even attempted to wiggle out of that rule by imposing a contract purporting to waive the consumer's right to the benefits of that rule.

In short, no authority exists which sanctions a contractual provision permitting parties to opt out of the benefits of the discovery rule in situations where the discovery rule would otherwise apply. This suggests there exists an implicit consensus that an effective judicial remedy against professionals or skilled crafts people requires accrual occur only upon discovery of the breach and thus the law will not tolerate contractual nullification of that policy.[63]

IV. *Case Authority, as Well as Logic and Public Policy, Support the Unenforceability of Contractual Provisions Purporting to Deny Plaintiffs the Benefits of the Delayed Discovery Rule in Situations, Such as House Inspections, Where It Applies.*

The foregoing conclusion finds support in the sole reported decision thus far to consider the issue, although in this instance in dicta. In *Silver v. Boatwright Home Inspection, Inc.*,[64] the issue on appeal was whether the home inspector was entitled to contractual attorney fees after the plaintiffs voluntarily dismissed it from the action when they received a favorable settlement from the other defendants. The court acknowledged it was unnecessary and perhaps unwarranted to determine whether the home inspector would have prevailed on its statute of limitations defense had it remained a defendant at trial. However, the court took the opportunity to scrutinize the one-year provision in the home inspection contract—identical to the one at issue in the case at bar.

"[W]hile the statute of limitations provision in the instant parties' contract could validly limit the plaintiffs to a one-year period for filing suit on

---

[63]See cases collected in 3 Witkin, California Procedure, *supra*, Actions, section 437, pages 549-552 ("As a practical matter these provisions are found only in contracts habitually drawn by the obligor, such as bills of lading, warehouse receipts, and insurance policies."); 43 California Jurisprudence Third (1978) Limitations of Actions, section 9, page 24, Validity of Agreement Prescribing Shorter Period Than Statute (citing no cases involving professionals or skilled trades people); Annotation, Validity of Contractual Time Period, Shorter Than Statute of Limitations, for Bringing Action (1966) 6 A.L.R.3d 1197 (discussing decisions involving only insurance, bonds, bills of lading, contracts for passage, sales contracts, leases, employment contracts and bailments).

[64]*Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443 [118 Cal.Rptr.2d 475].

all causes of action they might have against Boatwright, public policy considerations call into question the enforceability of the portion of that provision, which impliedly requires plaintiffs to waive the benefit of the so-called delayed discovery rule. We have reference to the contractual provision that requires the one-year period of limitation to begin 'after the date of the subject inspection' by Boatwright, rather than *after plaintiffs discovered or reasonably should have discovered facts that would support any cause of action against defendant.* . . .

"[I]t is arguable that the provision is unreasonable in that it assumes a person who retains Boatwright's home inspection services will necessarily know within one year that the inspector failed to observe, or failed to report, material information about the state of the inspected property. Ordinarily, '[t]he time for commencement of a legal action for breach of duty arising from a home inspection report shall not exceed four years from the date of the inspection.' (Bus. & Prof. Code, § 7199.) Four years is a reasonable period. Were the issue squarely before us, we could not say as a matter of law that a one-year *discovery* period is reasonable."[65]

Consistent with the *Boatwright* court, we find the contractual provision waiving the benefits of the delayed discovery rule runs afoul of important public policy considerations. Also, consistent with the *Boatwright* court, we are unable to find a contractual provision "reasonable" where it only gives homeowners a single year to discover their causes of action against home inspectors. A four-year outside limit on the time permitted for the home-owner to discover the inspector's negligence and its adverse consequences is clearly "reasonable." A contractual provision setting a somewhat shorter outside limit conceivably might be "reasonable," too. But a *one-year* outside boundary completely vitiates the delayed discovery rule. Indeed, such a provision blatantly substitutes a straight one-year statute of limitations for the delayed discovery rule.

Consistent with the policies behind this rule, we hold the buyers' causes of action did not accrue under the one-year statute of limitations provided in the home inspection contract until they discovered, or with the exercise of reasonable diligence, should have discovered the home inspector negligently failed to discover, or negligently failed to report, material defects in the home.

---

[65]*Silver v. Boatwright Home Inspection, Inc., supra,* 97 Cal.App.4th 443, 451-452, footnote 7, italics in original.

V. *A Written Contract for Home Inspection Services Does Not Immunize a Home Inspector from Tort Liability.*

 The inspector argues the buyers are not entitled to tort damages in any event because a breach of the duty of care under a contract is no longer actionable in tort. He cites *Freeman & Mills, Inc. v. Belcher Oil Co.*[66] to support his position. The *Freeman* court's holding supports instead a contrary view.

In *Freeman,* the Supreme Court directed "courts should limit tort recovery in contract breach situations to the insurance area, *at least in the absence of violation of an independent duty arising from principles of tort law* other than denial of the existence of, or liability under, the breached contract."[67] Under the common law the established rule is the negligent failure to exercise reasonable care and skill in undertaking to perform a service contract of this type is a tort, as well as a breach of contract.[68]

That a home inspector has an independent duty arising from tort law is now made express in the 1996 legislation. Business and Professions Code section 7196 specifies a home inspector has an independent duty to competently perform a home inspection. To recall, this section provides: "It is the duty of a home inspector who is not licensed as a general contractor, structural pest control operator, or architect, or registered as a professional engineer to conduct a home inspection with the degree of care that a reasonably prudent home inspector would exercise."

A review of the legislative history of this provision makes clear beyond dispute the Legislature expressly envisioned home inspectors would be liable in tort in the event they failed to discharge their statutory duty of care. For example, a Senate floor analysis prepared for the Senate Rules Committee, states "the purpose of the provision in this bill which establishes a statutory standard of care is to clarify that home inspectors who negligently prepare a home inspection report may be sued for damages arising from the

---

[66]*Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85 [44 Cal.Rptr.2d 420, 900 P.2d 669].

[67]*Freeman & Mills, Inc. v. Belcher Oil Co., supra,* 11 Cal.4th 85, 95, italics added, overruling *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158], which had recognized a tort cause of action for the bad faith denial of the existence of a contract.

[68]See, e.g., *Allred v. Bekins Wide World Van Services, supra,* 45 Cal.App.3d 984, 987 (contract for packing and shipping); *Roscoe Moss Co. v. Jenkins, supra,* 55 Cal.App.2d 369, 376 (contract to drill water well).

negligent preparation of that report."[69] This statement is repeated in another report prepared for the Senate Judiciary Committee with the comment "the bill intends to allow a suit against a home inspector who negligently fails to identify in his or her report a 'material defect'—a defect which significantly affects the value, desirability, habitability or safety of the dwelling, and which can be identified by a noninvasive physical examination of the property's systems and components."[70]

Furthermore, the only published decision that discusses a home inspector's statutory duty of care confirms the propriety of suing a home inspector in tort for the negligent failure to disclose material defects in a home.[71] There the court held, "[a] home inspection company that negligently fails to discover or disclose defects in real property may be liable to a client who purchases that property. Based on the foregoing principles, we conclude that it also may be jointly and severally liable with realtors who breach an overlapping duty to disclose."[72]

In short, a home inspector may be liable in tort for breach of his common law or statutory duty to exercise due care in preparing a home inspection report.

VI. *Disputed Factual Matters Are Not Properly Resolved on Review of a Judgment of Dismissal After a Demurrer Is Sustained Without Leave to Amend.*

The inspector argues, even assuming the discovery rule applies in this context, and even if home inspectors can be liable in tort for the negligent breach of their service contract, it is of no moment in this case because the very matters about which the homeowners complain were each expressly excluded as outside the scope of the home inspection contract.

We are mindful of the procedural posture of this case. This court is charged with reviewing a judgment of dismissal after the trial court sustained a demurrer without leave to amend. We are thus in no position to resolve factual disputes and make factual findings as a matter of law. For example, on this record it is impossible to state asbestos, which is expressly excluded from the scope of the report, and "asbestos-like material," which is

---

[69]Senate Rules Committee, Office of Senate Floor Analyses, analysis of Senate Bill No. 258 (1995-1996 Reg. Sess.) July 12, 1996, page 6.

[70]Senate Judiciary Committee, Report on Senate Bill No. 258 (1995-1996 Reg. Sess.) June 13, 1995, page 8.

[71]*Leko v. Cornerstone Building Inspection Service* (2001) 86 Cal.App.4th 1109 [103 Cal.Rptr.2d 858].

[72]*Leko v. Cornerstone Building Inspection Service, supra*, 86 Cal.App.4th 1109, 1119.

expressly *included* as a reportable item, are so materially different we can declare as a matter of law respondent's failure to note "asbestos-like material" was within the standard of care. Similarly, it is not possible for this court to state as a matter of law whether the poor air quality of the home was the result of matters excluded from the scope of the inspection, or whether it was the result of the inspector's failure to discover and note one of the air ducts was so improperly positioned and poorly sealed it drew in dust and debris from the basement and the out-of-doors, which contaminated the heating and cooling system and resultant interior air.

This court expresses no view on how these issues may ultimately be resolved. ■ However, to resolve factual questions on review from the sustaining of a demurrer would be both improper and impossible when the challenge is only to the sufficiency of the pleadings.[73]

For the same reason we disregard as irrelevant Moreno's declaration submitted in opposition to the demurrer. ■ In ruling on, or in reviewing a demurrer, "defects of a complaint are properly cured by amendments thereto, not by extraneous factual recitals in 'response' to the demurrers."[74] ■ The buyers should be granted leave to amend to incorporate these various factual assertions, as well as to clearly state facts regarding the relevant dates they discovered the various defects and the like. They should also be granted leave to amend to clearly state a cause of action under Business and Professions Code section 7196. We remand to the trial court to permit them to do so.[75]

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to vacate the dismissal, to overrule the demurrer, and for further proceedings consistent with this opinion. Appellants are awarded their costs on appeal.

Croskey, J.,* concurred.

**PERLUSS, P. J.,** Dissenting.— Two home buyers filed a lawsuit for negligence and breach of contract against a home inspector 14 months after the inspector allegedly failed to competently inspect the house they had

---

[73]*Blank v. Kirwan, supra,* 39 Cal.3d 311, 318.

[74]*Allred v. Bekins Wide World Van Services, supra,* 45 Cal.App.3d 984, 993.

[75]In light of our conclusion the judgment must be reversed, the trial court's award of attorney fees and costs to the inspector as the prevailing party must be reversed as well.

*Associate Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

agreed to purchase. The contract signed by the home buyers required any legal action against the home inspector, "including those sounding in tort or contract," to be initiated within one year from the date of the inspection. I respectfully disagree with the majority's conclusion that this express, written agreement to shorten the limitations periods otherwise applicable to the home buyers' causes of action to one year from the date of inspection is unreasonable as a matter of law.[1]

1. *The Parties' Agreement to Shorten the Limitations Period*

Under the terms of their agreement to purchase a 49-year-old house in Whittier, appellants Armando V. Moreno and Gloria Contreras had the right to have the property inspected and to approve the inspection results as a condition to the close of escrow. They hired respondent Deric Sanchez to conduct the inspection and agreed to pay him a $250 inspection fee.

On the date of the inspection, Sanchez gave Moreno a preprinted home inspection contract to sign. In addition to signing the agreement, Moreno was asked to initial two clauses in the preprinted form contract. The first clause was a liquidated damages provision limiting the liability of the home inspector. The second clause was a modification of the limitations periods governing claims against the home inspector. It provided, "No legal action or proceeding of any kind, including those sounding in tort or contract, can be commenced against Inspector/Inspection Company, or its officers, agents or employees more than one year after the date of the subject inspection. Time is expressly of the essence herein. This time period is shorter than otherwise provided by law."

Moreno, who is a lawyer, a Los Angeles Superior Court commissioner and a licensed real estate broker, requested that Sanchez eliminate both provisions. After some discussion, Sanchez agreed to strike the liquidated damages clause but refused to delete the limitations clause. Moreno then signed the agreement and initialed the limitations clause.

2. *An Agreement to Shorten the Applicable Limitations Period Should Be Enforced Unless Unreasonable as a Matter of Law*

Under California law parties may agree to a provision shortening the statute of limitations, "qualified, however, by the requirement that the period fixed is not in itself unreasonable or is not so unreasonable as to show

---

[1] I agree *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85 [44 Cal.Rptr.2d 420, 900 P.2d 669] does not limit the home buyers to a cause of action for breach of contract against the inspector.

imposition or undue advantage. [Citations.]" (*Capehart v. Heady* (1962) 206 Cal.App.2d 386, 388 [23 Cal.Rptr. 851, 6 A.L.R.3d 1190]; see *Beeson v. Schloss* (1920) 183 Cal. 618, 622-623 [192 P. 292]; *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1548 [46 Cal.Rptr.2d 33].) Although other jurisdictions had held that a statute of limitations may not be shortened or waived, "[s]uch is not the rule in this state, where such statutes are regarded as statutes of repose, carrying with them, not a right protected under the rule of public policy, but a mere personal right for the benefit of the individual, which may be waived. [Citations.] We are unable to perceive that any distinction can be made upon the ground of public policy between the right of a party to waive the plea of the statute of limitations as a defense to an action, and his right to waive a portion of the time granted by the statute for the commencement of an action." (*Tebbets v. Fidelity and Casualty Co.* (1909) 155 Cal. 137, 139 [99 P. 501] [holding on demurrer that six-month contractual limitations period was not unreasonable]; accord, *Beeson v. Schloss, supra*, 183 Cal. at p. 622 [contractual provision shortening the statute of limitations "violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage"].)[2]

When, as in the instant case, the defendant has demurred to the complaint based on a contractual limitations period, "the real question to be determined here is whether the allegations of the complaint show that the limitation is unreasonable. . . . The question is one of law, namely, is the period of limitation, *in itself*, unreasonable. [Citation.]" (*Capehart v. Heady, supra*, 206 Cal.App.2d at p. 388.) If the period is not inherently unreasonable, "California courts accord contracting parties substantial freedom to modify the length of the statute of limitations." (*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc., supra*, 38 Cal.App.4th at p. 1548.)

In the case at bar, the one-year limitations provision was clearly stated in the parties' contract; cautioned that it imposed a time period for filing suit that "is shorter than is otherwise provided by law"; was unambiguous in its application to both contract and tort claims; was the subject of negotiation between Moreno and the home inspector; and, after Moreno failed to obtain the inspector's agreement to delete the provision, was separately initialed by

---

[2]As the majority observes, the leading cases recognizing the parties' right to shorten the limitations period for filing a lawsuit involve contract-based claims. It is, of course, not surprising that cases enforcing contractual provisions to shorten the limitations period invariably involve duties arising from contract—as does the case at bar. However, contractual limitations clauses have also been applied to bar tort claims based on an alleged breach of duty arising from contract. (E.g., *CBS Broadcasting Inc. v. Fireman's Fund Ins. Co.* (1999) 70 Cal.App.4th 1075, 1086 [83 Cal.Rptr.2d 197].)

Moreno. There is no dispute the provision was reasonable in those respects.[3] Moreover, California courts have uniformly enforced provisions shortening the four-year statutory limitations period for breach of a written contract (Code Civ. Proc., § 337, subd. 1) to one year (e.g., *Capehart v. Heady, supra,* 206 Cal.App.2d at p. 388) and to even shorter periods, as well. (E.g., *Tebbets v. Fidelity and Casualty Co., supra,* 155 Cal. at p. 138 [six months].)

The majority, however, concludes the parties' agreement is unreasonable as a matter of law because it impliedly required Moreno to waive the benefit of the nonstatutory delayed discovery rule first recognized earlier in its opinion. I respectfully disagree.

No statute prohibits the parties to a home inspection contract from agreeing to a shortened limitations period. (*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc., supra,* 38 Cal.App.4th at p. 1548 ["[E]xcept as restricted by statute, California courts accord contracting parties substantial freedom to modify the length of the statute of limitations."].) Indeed, permitting the parties to bargain for such a provision is fully consistent with the 1996 legislation governing practices in the home inspection industry. The parties' agreement does not otherwise offend public policy. (See, e.g., *Tebbets v. Fidelity and Casualty Co., supra,* 155 Cal. at p. 139 [statutes of limitations are "statutes of repose, carrying with them, not a right protected under the rule of public policy, but a mere personal right for the benefit of the individual, which may be waived"].)

### 3. *Legislative Regulation of the Home Inspection Industry*

The Legislature in 1996 adopted legislation to regulate practices for the home inspection industry "to assure that consumers of home inspection services can rely upon the competence of home inspectors." (Stats. 1996, ch. 338, § 1.) Business and Professions Code section 7196[4] imposes a standard of care applicable to all home inspectors not otherwise licensed under the code: "It is the duty of a home inspector who is not licensed as a general contractor, structural pest control operator, or architect, or registered as a professional engineer to conduct a home inspection with the degree of care that a reasonably prudent home inspector would exercise."

---

[3]The limitations provision in the inspection agreement obviously did not advise Moreno of his inchoate right to the delayed discovery rule—a right not recognized prior to the decision in this case. However, Moreno was expressly informed that the one-year limitations period to which he agreed was "shorter than is otherwise provided by law." I fail to understand how the majority can conclude this was anything but a "knowing waiver" by Moreno, who is not only a lawyer but also a real estate broker. (Maj. opn., *ante,* at p. 1429, fn. 45.)

[4]All further statutory references are to the Business and Professions Code unless otherwise indicated.

In adopting standards for the home inspection industry, the Legislature prohibited certain contractual provisions contained in inspection agreements it considered "contrary to public policy": "Contractual provisions that purport to waive the duty owed pursuant to Section 7196 [requiring 'the degree of care that a reasonably prudent home inspector would exercise'], or limit the liability of the home inspector to the cost of the home inspection report, are contrary to public policy and invalid." (§§ 7198, 7196.) However, the Legislature did not adopt proposed language in section 7198 that would have broadened this provision to prohibit as contrary to public policy *all* contractual provisions that "unreasonably limit the liability of the home inspector," thus reserving to the parties the right to define their contractual duties and responsibilities except as specifically prohibited by statute. (Compare Sen. Bill No. 258 (1995-1996 Reg. Sess.) § 2, as amended June 12, 1995, with Sen. Bill No. 258 (1995-1996 Reg. Sess.) § 2, as amended June 20, 1995, and Stats. 1996, ch. 338, § 2.) The majority's refusal to enforce Moreno's agreement to a shortened limitations provision is squarely at odds with this legislative recognition of the parties' freedom to contract.

Moreover, while imposing a duty of reasonable care on home inspectors in section 7196, the Legislature itself did not provide for a rule of delayed discovery, as it did, for example, when establishing the limitations period for professional malpractice actions against health care providers (Code Civ. Proc., § 340.5) and attorneys (Code Civ. Proc., § 340.6, subd. (a)) and actions for damages suffered as a result of domestic violence (Code Civ. Proc., § 340.15, subd. (a)(2)). Rather, section 7199, adopted in 1996, specifies a maximum time period within which a lawsuit must be filed *measured from the date of the inspection itself*: "The time for commencement of a legal action for breach of duty arising from a home inspection report shall not exceed four years from the date of the inspection."

The absence of a statutory provision for delayed discovery and the presence of a maximum limitations period measured from the date of the inspection belie the assertion that the parties' own agreement to a limitations period commencing with the inspection rather than discovery of an alleged breach of duty by the home inspector somehow offends important public policy considerations. Similarly, the Legislature's election not to prescribe what the limitations period *is* for a legal action for breach of duty arising from a home inspection report but only to define what it is not (that is, it is not to "exceed four years from the date of the inspection") and its decision to limit section 7198's public policy prohibitions to the two contractual provisions identified, taken together, refute the suggestion that four years is the *minimum* "reasonable" period of time for a homeowner to bring suit, notwithstanding an express agreement to the contrary.

### 4. *Public Policy Does Not Compel Invalidation of Contractual Limitations Provisions Simply Because the Delayed Discovery Rule Might Otherwise Apply*

Whether or not the delayed discovery rule should be applied to negligence claims against a home inspector in an appropriate case, the majority advances no compelling reason to disregard the parties' express contractual agreement to limit the home buyers' right to sue to a one-year period measured from the date of inspection. Indeed, the primary ground advanced for invalidating the parties' agreement is simply the *absence* of authority enforcing such a provision, which the majority suggests indicates "an implicit consensus" that such contractual limitations provisions are invalid. Other than dicta in Justice Croskey's recent opinion for Division Three of our court in *Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 451, footnote 7 [118 Cal.Rptr.2d 475], however, absolutely no appellate decision supports the majority's conclusion.

The majority does express concern that enforcing a home buyer's agreement to shorten the limitations period in a contract for a home inspection report would require the courts to enforce similar provisions in retainer agreements between lawyers and their clients or physicians and their patients. Such angst seems unnecessary. Instances in which the Legislature has mandated a delayed discovery rule—as is the case for both lawyers and health care providers—are easily distinguishable from routine commercial agreements with contractors and tradespeople. (See *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc., supra,* 38 Cal.App.4th at p. 1548.) Similarly, utilizing traditional concepts of unconscionability, as well as the principle of "reasonableness" central to any analysis of contractual limitations provisions, the courts are well-equipped to protect parties from overreaching by fiduciaries without invalidating every provision in any contract in situations in which a delayed discovery rule would otherwise apply. (E.g., *West v. Henderson* (1991) 227 Cal.App.3d 1578, 1585-1586 [278 Cal.Rptr. 570] [judicial scrutiny of limitation of actions provisions includes "broader analysis of the conscionability of the provision"].)

To be sure, in some situations a previously undetected defect in the house may not be discovered within the time provided by the parties in their agreement—the public policy emphasized by the majority and in the *Silver v. Boatwright Home Inspection, Inc., supra,* 97 Cal.App.4th 443 dicta.[5] Yet nothing guarantees that hidden problems will be discovered within the

---

[5]Significantly, this is *not* such a case. Moreno's second amended complaint alleged that "*several months after the purchase of the subject property*"—that is, well within the contractually agreed one-year limitations period—Moreno "learned that the house contained the following defects: The air conditioning system in the basement contained asbestos; one of the

four-year maximum period provided by the Legislature in section 7199, either. For example, a roofing defect may not be apparent until there is a particularly heavy rainy season, which may not occur in Los Angeles until five or six years after the close of escrow. In no event would a roofing problem of this sort, discovered more than four years after the home inspection, appropriately be the subject of a lawsuit alleging that the inspector breached either his contract with the home buyer or a duty of care under section 7196.

Viewed in retrospect, of course, the one-year provision might work an unfairness to the home buyer in a particular case, as could a two-year or three-year period, as well. However, that hypothetical possibility does not make the provision to which these parties agreed unreasonable as a matter of law. (See *Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1420 [49 Cal.Rptr.2d 191] ["When parties have an actual contract covering a subject, a court cannot . . . substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract."].)

Because no statute restricts the right of the parties to a home inspection agreement to contract for a shorter limitations period, I believe the parties' "substantial freedom to modify the length of the statute of limitations" (*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.,* *supra,* 38 Cal.App.4th at p. 1548) requires that we enforce their agreement. Accordingly, I would affirm the order of the trial court sustaining Moreno's and Contreras's demurrer to the second amended complaint.

Respondent's petition for review by the Supreme Court was denied July 23, 2003. Brown, J., did not participate therein. Chin, J., was of the opinion that the petition should be granted.

---

air conditioning ducts was [improperly] vented . . . causing dust, debris, and mites to enter the air supply; a northwest yard drain was inoperable, causing water to pond under the structure; and the property was built on expansive soil causing interior and exterior walls to crack. Additionally, 21 windows were nailed and/or painted shut, thereby preventing plaintiffs from opening them to get rid of the dust, debris, and mite problems." Although Moreno also alleges that the full extent of the problems at the house was not discovered until a new inspection of the residence found asbestos in September 1999, it is simply not correct, as the majority suggests, that the limitations clause in the parties' agreement required Moreno's lawsuit to be filed "prior to any accrual of a cause of action."