**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WESTERN FILTER CORPORATION,
    *Plaintiff-counter-defendant-*
        *Appellant,*

v.

ARGAN, INC., a Delaware
Corporation; RAINER BOSSELMANN,
an individual; ARTHUR F. TRUDEL,
an individual; HAYWARD MILLER
III, an individual,
    *Defendants-counter-claimants-*
        *Appellees.*

No. 07-55535

D.C. No.
CV-05-03548-SGL

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
June 3, 2008—Pasadena, California

Filed August 25, 2008

Before: Diarmuid F. O'Scannlain and Richard C. Tallman,
Circuit Judges, and James K. Singleton,*
Senior District Judge.

Opinion by Judge Tallman

---

*The Honorable James K. Singleton, United States District Judge for
the District of Alaska, sitting by designation.

11635

## COUNSEL

Gregory A. Long, Sheppard Mullin Richter & Hampton, LLP, Los Angeles, California, for the appellant.

Joseph L. Clasen, Robinson & Cole, LLP, Stamford, Connecticut, and Thomas J. Dolan, Robinson & Cole, LLP, New York, New York, for the appellee.

## OPINION

TALLMAN, Circuit Judge:

Western Filter Corporation ("Western Filter") appeals the district court's grant of summary judgment in favor of Argan,

Inc. ("Argan"). The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We are asked to decide an issue of first impression under California law, whether a provision within a Stock Purchase Agreement ("SPA") permitting the representations and warranties of the parties to survive closing, also serves as a contractual statute of limitation that reduces a longer period otherwise provided by California law. Because the provision at issue does not unambiguously state the parties' intent to contractually reduce the applicable California statute of limitation to one year, we reverse and remand.

I

Puroflow, Inc. ("Puroflow") designs, manufactures, and sells industrial aerospace and automotive filtration products. Puroflow is a wholly owned subsidiary of Argan.

Western Filter competed with Puroflow in the filter business. It decided to buy its competitor. On October 30, 2003, Western Filter executed the SPA with Argan, acquiring all of Puroflow's stock for $3.5 million.[1] The parties dispute whether Argan conditioned the sale of Puroflow on an October 30 closing date.

Both parties made several representations and warranties, which are set forth in Article III of the SPA. The portion of the contract at issue is found in Section 8. Section 8.1 ("Survival Clause") provides that "[t]he representations and warranties of [Western Filter] and [Argan] in this Agreement

---

[1] These companies have a prior history of courtship. In 2002, Paul Akian, President of Western Filter, offered to buy Puroflow for $5 million. That deal fell apart and, in April 2003, Argan acquired Puroflow through a private placement. In August 2003, Rainer Bosselmann, the Chief Executive Officer of Puroflow, contacted Akian about buying Western Filter. Akian declined, but offered to buy Puroflow. On September 3, 2003, Argan and Western Filter signed a Letter of Intent so Western Filter could purchase Puroflow's stock.

shall survive the Closing for a period of one year, except the representations and warranties contained in Section 3.1(a), (b), (c), and (f) and 3.2(a) and (b) shall survive indefinitely."

The SPA also provides for an escrow agreement, which required Western Filter to pay $300,000 in cash at closing to an escrow agent. The escrow funds are intended to cover any claims brought by Western Filter for indemnification under Article VI of the SPA. Section 6.1 provides that Argan agrees to indemnify Western Filter for "[a]ny and all Loss . . . resulting from any misrepresentation or breach of warranty by [Argan] under Section 3.1," or for "[a]ny and all Loss resulting from any non fulfillment of any covenant or agreement on the part of [Argan] under Section 5.1 of this Agreement." Section 6.3 sets forth the procedures for asserting a right to indemnification:

> Except as otherwise provided in sections 6.1 and 6.2, subject to the limitations imposed by section 8.1, promptly after receipt by an indemnified party pursuant to the provisions of this Article VI of notice of the commencement of any action, claim or proceeding involving the subject matter of the foregoing indemnity provisions, such indemnified party shall, if a claim thereof is to be made against an indemnifying party pursuant to the provisions of this Article VI, promptly notify such indemnifying party of the commencement thereof . . . .

After acquiring Puroflow, Western Filter discovered that Puroflow's inventory was allegedly worth significantly less than what Argan represented. On September 17, 2004, Western Filter sent written notice to Argan, claiming that "the management of Puroflow and Argan grossly misrepresented the financial condition of Puroflow." Western Filter claimed damages of $2,002,580 and asserted that it "ha[d] a claim against Argan not only for breach of representations and warranties, but also for fraud in the inducement." Nevertheless,

while "fully prepared to assert its claims in court, if necessary," Western Filter stated that it "would prefer to avoid protracted litigation, provided the matter c[ould] be settled immediately for the sum of $700,000." In the event Argan was unwilling to settle, Western Filter stated that it would "have no choice but to take such actions as may be necessary to protect its interest in this matter."

Rainer Bosselmann responded to Western Filter's notice letter on September 29, 2004. He said that he was "disappointed," but felt that they could work through a lot of the issues without "involving the lawyers again." In late October 2004, Western Filter confirmed with Argan that the escrow funds would be retained pending resolution of the dispute between Western Filter and Argan.

Six months later, Western Filter filed suit in the Los Angeles County Superior Court against Argan and its officers for breach of contract, intentional misrepresentation, concealment and nondisclosure, negligent misrepresentation, false promise, negligence, and declaratory relief. Argan removed the matter to federal court.[2]

On March 15, 2007, the district court granted Argan's motion for summary judgment, concluding that Western Filter's claims were barred by the one-year limitation set forth in the Survival Clause.[3] It concluded that "[t]he plain meaning of section 8.1's provisions clearly indicate that, if [Argan] breached certain representations and warranties, then for a one-year period after the closing Western Filter could file a

---

[2]Argan's counterclaim against Western Filter is not at issue in this appeal.

[3]The district court had previously denied Argan's motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court declined to address Argan's arguments regarding the survival of the representations and warranties at the pleading stage. However, it left that argument open for Argan to raise in a motion for summary judgment.

claim against defendants for such breach, be it a suit for indemnification (subject to the $300,000 monetary cap) or a suit in law not subject to the monetary cap in the case of intentional misrepresentations." This interpretation was "best exemplified by the fact that the parties themselves distinguished between those representations and warranties that were time-barred by the SPA and those that were not time-barred."

In support of its decision, the district court noted that the indemnification provision expressly provides that an indemnity claim is "subject to the limitation imposed by section 8.1." The court also noted that other courts have interpreted materially indistinguishable language as creating a contractual statute of limitation period, that discovery has developed no evidence suggesting that the parties had a contrary understanding of the plain meaning of the Survival Clause, and that the demand letter to Argan was not sufficient to toll the statute of limitation.

To address Western Filter's remaining arguments, the court "accept[ed] and adopt[ed] as its own" Judge M. James Lorenz's decision in *Herring v. Teradyne, Inc.*, 256 F. Supp. 2d 1118 (S.D. Cal. 2002). In *Herring*, as in this case, the sole issue was whether a survival clause constituted a one-year contractual statute of limitation or set forth the period of time during which a breach could occur. 256 F. Supp. 2d at 1125. Judge Lorenz concluded that the following survival clause was sufficient under California law to limit the applicable commercial statute of limitation: "[t]he covenants, agreements, representations and warranties of the parties hereto contained in this Agreement or in any certificate or other writing delivered pursuant hereto or in connection herewith shall survive the Closing until the first anniversary of the Closing Date."[4] *Id.*; *see* Cal. Civ. Proc. Code § 337 (the statute of limi-

---

[4]The Clause went on to provide that "[n]o claim for indemnity under this Agreement with respect to any breach of any representations, warran-

tation for an action brought for breach of a written contract is four years); *id.* § 338(d) (the statute of limitation for an action for relief on grounds of fraud is three years).

In an unpublished memorandum disposition, a three-judge panel of our court reversed the decision in *Herring. See Herring v. Teradyne, Inc.*, 242 Fed. Appx. 469 (9th Cir. July 13, 2007). We stated:

> We also disagree with the district court's conclusion that the survival clauses contained in the merger agreements clearly and unambiguously reduced the statute of limitations from four years to one year. Parties may contractually reduce the statute of limitations, but any reduction is construed with strictness against the party seeking to enforce it. *See Lewis v. Hopper*, 140 Cal. App. 2d 365, 367 (Cal. Ct. App. 1956). Here, we find no clear and unequivocal language in the survival clauses that permits the conclusion that the parties have unambiguously expressed a desire to reduce the statute of limitations.

*Id.* at *471.

## II

We review de novo the district court's grant of summary judgment. *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006).

## III

**[1]** Western Filter argues that the Survival Clause's one-

---

ties and/or covenants of Company and/or Seller shall be made after the applicable period specified in the preceding sentence and all such claims shall be made in accordance with the applicable provisions of the Escrow Agreement." *Id.*

year limitation serves only to set forth the time period for which a breach may occur or be discovered, whereas Argan maintains that the Survival Clause serves as a contractual limitation on the applicable statute of limitation.[5] In California, the statute of limitation for a contract claim is four years, three years for a fraud or intentional misrepresentation claim, and two years for a negligent misrepresentation claim. *See* Cal. Civ. Proc. Code §§ 337, 338(d); *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*, 115 Cal. App. 4th 1145, 1155 (Cal. Ct. App. 2004).

[2] "It is a well-settled proposition of law [in California] that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (Cal. Ct. App. 2003) (internal quotation marks omitted). While allowed under California law, contractual stipulations are not favored. *Lewis v. Hopper*, 140 Cal. App. 2d 365, 367 (Cal. Ct. App. 1956) (stating that contractual stipulations are not favored "because they are in derogation of the statutory limitation" (internal quotation marks omitted)). Therefore, "they should be construed with strictness against the party invoking them." *Id.* (internal quotation marks omitted).

[3] Both parties agree that without the Survival Clause the representations and warranties would have terminated at the time of closing. "[R]epresentations and warranties are statements of fact as of the date of the execution of the acquisition agreement, and the truthfulness of the representations and

---

[5]Argan contends that Western Filter has waived the argument that "Section 8.1's one year survival provision creates a period of time for the parties to discover any breach of the representation[s] or warranties by a party to the SPA." We disagree. That interpretation of the Survival Clause underlies Western Filter's entire argument.

warranties as of both the date of execution and, when appropriate, the date of the closing is generally a condition to the closing."[6] Samuel C. Thompson, Jr., *Business Planning for Mergers and Acquisitions* 780 (Carolina Academic Press 2001) (1997). In other words, the representations and warranties serve as a safety net for the seller and buyer. If, prior to closing, either the seller or buyer discovers that a representation or warranty made by the other party is not true, they have grounds for backing out of the deal. *See id.* ("If prior to closing a party discovers that a representation or warranty is materially inaccurate, the party can refuse to close and possibly sue for damages.").

[4] The closing date itself triggers the contractual limitation on liability. Unless the parties agree to a survival clause—extending the representations and warranties past the closing date—the breaching party cannot be sued for damages post-closing for their later discovered breach. With that premise in mind, Argan reasonably argues that the one-year limitation in the Survival Clause was intended to serve as a contractual time limit on any action brought based on a breach of the contract's representations and warranties. Under Argan's theory, Western Filter could not bring a claim without the Survival Clause, and, even with the Survival Clause, Western Filter only had one year after closing to bring such a claim.

This interpretation has some basis in out-of-circuit case law.[7] In *State Street Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83 (1st Cir. 2001), the First Circuit held that a clause stating that the representations and warranties "shall expire on

---

[6]As a condition to closing, Section 5.1(a) provided:

The representations and warranties of [Argan] under this Agreement shall be true and correct in all material respects as of the date of the Closing with the same effect as though made on and as of the date of the Closing.

[7]Both parties concede that there is no controlling authority in our circuit on the interpretation of California law.

the second (2nd) anniversary of the Closing" clearly described a contractual statute of limitation. *Id.* at 87-88. The court reasoned that "[t]o say that something 'shall survive' for a period of time, . . . is very much like saying something 'shall expire' *after* a period of time." *Id.* at 88. And, although the clause did not include any language stating that a claim must be *filed* within the limitation period, "the language was reasonably susceptible to only one meaning: that any claim based on warranties contained in the Purchase Agreement must be brought within [the specified time period] of the closing." *Id.* (alterations in original) (internal quotation marks omitted); *see also Latek v. LeaseAmerica Corp.*, No. 90 C 7230, 1992 WL 170546, at *3 (N.D. Ill. July 16, 1992), *aff'd*, 7 F.3d 238 (7th Cir. Sept. 22, 1993) (stating that a provision that warranties "shall survive" for 18 months from the closing date "clearly describes a contractual statute of limitations"); *Commonwealth Fin. Corp v. USAAmeribancs, Inc.*, No. 86 C 6181, 1987 WL 19142, at *2 (N.D. Ill. Oct. 20, 1987) (concluding that a cause of action was time-barred when the provision authorizing suit stated that the seller shall indemnify buyer for one year after closing).

**[5]** However, California law does not favor contractual stipulations to limit a statute of limitation. Such a stipulation must be clear and explicit, and is to be strictly construed against the party invoking the provision. *Lewis*, 140 Cal. App. 2d at 367. California courts have also suggested that language limiting the life of a warranty is not sufficiently clear and explicit to also limit the statute of limitation. In *Hambrecht & Quist Venture Partners v. American Medical International, Inc.*, 38 Cal. App. 4th 1532 (Cal. Ct. App. 1995), the California Court of Appeal held that "a standard choice-of-law provision (which states that a contract shall be governed by the 'laws' of a particular jurisdiction) incorporates the statutes of limitations of the chosen state." *Id.* at 1536. In doing so, the court rejected the plaintiffs' argument that "the absence of a 'time to sue' clause or an explicit reference to Delaware's statutes of limitations means that the parties intended the

forum's (California's) statutes of limitations to apply." *Id.* at 1544 n.10. It did not matter that in dealing with other "timing" issues the parties had expressly stated that the representations and warranties survived five years beyond closing because, as the court held, "[b]y using the term 'laws' in the choice-of-law provision, the parties incorporated Delaware's statutes of limitations without need for any additional contract language." *Id.* Moreover, the court stated that "a provision specifying the life of a warranty has no bearing on the time period for filing suit after the warranty has been breached." *Id.* Although that statement appears to be dicta, the overwhelming essence of the California appellate court decisions is that parties must be more explicit than the language at issue in this case.

Like California, New York law allows parties to agree "to a shorter period of limitations within which an action may be brought so long as the period agreed to is not unreasonably short." *Hurlbut v. Christiano*, 63 A.D. 2d 1116, 1117 (N.Y. App. Div. 1978). However, "[c]ontractual stipulations which limit the right to sue to a period shorter than that granted by statute, are not looked upon with favor because they are in derogation of the statutory limitation. Hence, they should be construed with strictness against the party invoking them." *Id.* (internal quotation marks omitted). In *Hurlbut*, the pertinent clause stated the following: "The parties hereto further agree that the representations and warranties set forth in Sections 4.01(d) and 4.03(g) of the Purchase Agreement between them dated February 29, 1972 shall survive the closing for a period of (3) years." *Id*. The court found that the language in this clause did not create a contractual statute of limitation. It stated: "The language of the agreement is clear and unambiguous and suggests nothing from which a shortened period of limitations can be inferred." *Id.* at 1117-18.

**[6]** Although Argan's interpretation is reasonable—and ultimately may be more practical—the Survival Clause can also be reasonably read as Western Filter suggests: that the

one-year limitation serves only to specify when a breach of the representations and warranties may occur, but not when an action must be filed.[8] Western Filter's interpretation becomes even more reasonable in light of California's policy of strictly construing any contractual limitation against the party seeking to invoke the time limitation.[9] *See Lewis*, 140 Cal. App. 2d at 367. Because the language of the Survival Clause is ambiguous, the district court erred in holding that the clause created a limitation period. Accordingly, we reverse the summary judgment entered by the district court.[10] Each party shall bear

---

[8]Contrary to Argan's assertion, this interpretation gives effect to the one-year limitation on the general representations and warranties, as well as the specific representations and warranties that survive "indefinitely." Under the one-year limitation, Western Filter can sue for breach of representations and warranties based on facts discovered pre-closing and up to one year after closing. While limited to when the basis for the breach may arise, Western Filter can bring its action anytime so long as it is within the applicable California statute of limitation. On the other hand, an action for a breach of the representations and warranties covered by the "indefinitely" portion of the Survival Clause may be discovered anytime during the applicable statute of limitation.

[9]Argan relies on secondary authority in support of its argument that it is common understanding among practitioners that limitations such as that found in the Survival Clause serve as a contractual statute of limitation. It contends that "[n]owhere in . . . real practice[ ] do . . . lawyers spell out that the time periods being negotiated are intended as limitations for subsequent suit." However, in *Moreno*, the parties did just that. There, the clause provided that "any lawsuit, sounding in either contract or tort, had to be filed within a year from the date of the inspection. The contract noted, 'This time period is shorter than otherwise provided by law.' " 106 Cal. App. 4th at 1420. Although the court questioned the reasonableness of the limitation, given the unequivocal language provided, it had no reason to question the parties' intent. *See also Lewis*, 140 Cal. App. 2d at 365-66 (quoting the survival clause, which stated: "No suit or action on this bond to recover for labor performed or material furnished in respect to work herein referred to shall be sustained unless the same be commenced within the period provided by law after the claimant files his claim or lien, or if he files no such claim or lien, unless the suit or action shall be commenced within six (6) months after completion of the work described in said contract" (internal quotation marks omitted)).

[10]Because we conclude that the Survival Clause was ambiguous, we need not address Western Filter's remaining arguments: that, in light of

its own costs on appeal.

**REVERSED and REMANDED.**

the California Court of Appeal decision in *Moreno*, 106 Cal. App. 4th 1415, the district court's construction of the Survival Clause violates public policy since it fails to make allowance for the delayed discovery of fraud; that Western Filter's written notice was sufficient to toll the statute of limitation; or that the district court erred in concluding that Western Filter's claims were based on conduct covered by the representations and warranties.