IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 21, 2014 Session

## TOWN OF CROSSVILLE HOUSING AUTHORITY v. JOHN A. MURPHY, ET AL.

**Direct Appeal from the Chancery Court for Fentress County**
**No. 1058      Andrew R. Tillman, Judge**

**No. M2013-02576-COA-R3-CV - Filed July 25, 2014**

The buyers of an apartment complex brought this action against the sellers for breach of contract and intentional misrepresentation after discovering that several representations made by the sellers in the transactional documents were false. The buyers challenge the propriety of the trial court's grant of summary judgment to the defendants. After review, we conclude that the defendants are entitled to summary judgment on the plaintiff's breach of contract claims, and that Paul Murphy and John Murphy are entitled to summary judgment on the plaintiff's intentional misrepresentation claims. As to the remainder of the defendants, we conclude that summary judgment on the plaintiff's intentional misrepresentation claims was improper because they did not meet their initial burden of production on summary judgment. We affirm in part and reverse in part the trial court's judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S. and J. STEVEN STAFFORD, J., joined.

Brandon Layne Morrow and John E. Winters, Knoxville, Tennessee, for the appellant, Town of Crossville Housing Authority.

Christopher Dunn Heagerty and Lisa Jellison Hall, Knoxville, Tennessee, for the appellees, Adren Greene, John A. Murphy, Paul A. Murphy, III and Murphy Development, LLC

# OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from the 2004 sale of the White Oak Apartments in Jamestown, Tennessee. The Defendants/Appellees, John A. Murphy, Paul A. Murphy III, and Adren Greene (the "individual defendants") are members of Defendant/Appellee Murphy Development, LLC ("Murphy Development"), which originally developed the White Oak Apartments. Prior to October 1, 2004, the individual defendants were also members of Azalea Development, LLC ("Azalea Development"), a Tennessee limited liability company that owned the White Oak Apartments. On that date, the individual defendants transferred all right, title, and interest in and to Azalea Development to the Plaintiff/Appellant Town of Crossville Housing Authority ("CHA") pursuant to a Transfer and Assignment of Membership Interest and Restructuring Agreement (the "Transfer Agreement").

Pursuant to Section 7 of the Transfer Agreement, each of the individual defendants made a number of representations and warranties to CHA regarding Azalea Development and the White Oak Apartments. Particularly relevant to this case, Section 7(h) of the Transfer Agreement provided that "[a]ll of the representations and warranties made . . . in the Original Operating Agreement [of Azalea Development] are true and correct as of [October 1, 2004]." Among the representations in the Original Operating Agreement of Azalea Development were statements that the White Oak Apartments qualified as a "Qualified Low-Income Housing Project" under Section 42(g) of the Internal Revenue Code and that they were in compliance with all applicable federal, state, and local laws and regulations.

With regard to the representations and warranties made by the individual defendants, the Transfer Agreement also contained the following provision (the "Survival Clause"):

> Survival. The representations, warranties and indemnification and obligations set forth in this Agreement shall survive the execution of this Agreement for a period of three (3) years from the date hereof (the "Indemnity Termination Date"); provided however, that there shall be no such release with respect to any fraud or intentional misrepresentation; provided further that if notice of any purported claim (an "Extended Claim") for a breach of a representation, warranty or indemnity is provided by a party (the "Claiming Party") hereto seeking damages, indemnification or other remedies with respect to the Extended Claim to the party hereto (the "Breaching Party") from whom such damage, indemnification or other remedy is sought, there shall be no release of the Extended Claim with respect to any action commenced with respect to the Extended Claim in federal, state or local court within three (3) years after

the date hereof.

On April 15, 2009, the United States Department of Justice filed a complaint against Azalea Development in United States District Court for the Middle District of Tennessee alleging that the White Oak Apartments did not comply with the Fair Housing Act (the "FHA") and the Americans with Disabilities Act (the "ADA"). On March 30, 2010, the court entered a Consent Order requiring Azalea Development to make certain retrofits to the White Oak Apartments to increase the property's compliance with federal regulations.

On September 3, 2010, CHA filed a complaint for breach of contract and intentional misrepresentation against each of the individual defendants and Murphy Development. CHA alleged that Murphy Development was liable for the actions of the individual defendants through the doctrine of respondeat superior. CHA alleged that the individual defendants breached the Transfer Agreement because the White Oak Apartments were not in compliance with the FHA and ADA on October 1, 2004 and therefore failed to comply with applicable federal law or qualify as a "Qualified Low-Income Housing Project" under Section 42(g) of the Internal Revenue Code. Additionally, CHA alleged that the individual defendants misrepresented the condition of the White Oak Apartments by making representations in the transactional documents that the property was in compliance with federal, state, and local laws when it was not. The defendants answered, denying any liability for breach of contract or intentional misrepresentation.

The defendants filed a motion for summary judgment and a statement of undisputed facts, which they supported with affidavits of Paul and John Murphy. In the motion, the defendants asserted that CHA's breach of contract claims were barred by the three-year limitations period contained in the Survival Clause of the Transfer Agreement. Regarding CHA's claim of intentional misrepresentation, the defendants asserted that any representations made by Paul or John Murphy in the transactional documents were based on representations made to them by the architects and engineers who designed the White Oak Apartments and were therefore made without the intent to mislead or otherwise confuse CHA. Paul and John Murphy provided sworn affidavits, which were attached as support for the defendants' assertions. CHA filed a response, contending that the Survival Clause of the Transfer Agreement lacked requisite specificity to operate as a contractual limitation on the time to file a lawsuit. With regard to its intentional misrepresentation claim, CHA contended that the affidavit statements of Paul and John Murphy were conclusory and therefore insufficient to shift the burden of production on summary judgment.

The trial court entered an order on October 21, 2013, granting summary judgment in favor of the defendants on all of CHA's claims. First, the trial court found that the statements in Paul and John Murphy's affidavits were sufficient to shift the burden of

production on intentional misrepresentation to CHA. Because CHA failed to provide evidence of a genuine issue of material fact with regard to the intentional misrepresentation claim, the trial court granted summary judgment to the defendants on that issue. Second, the trial court granted summary judgment to the defendants on CHA's breach of contract claim, finding that the claim was time-barred by the Survival Clause, which operated as a contractual limitation reducing the filing period to three years. CHA appealed the trial court's ruling.

## II. DISCUSSION

### *Summary Judgment Standard*

Summary judgment is appropriate when the moving party can demonstrate that the case does not present any genuine issues of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The moving party has the ultimate burden of persuading the court that the there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Byrd*, 847 S.W.2d at 215. If the moving party makes a properly supported motion for summary judgment, the burden of production shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact requiring trial. *Id.*

The moving party can make the required showing and shift the burden of production either by affirmatively negating an essential element of the nonmoving party's claim or showing that the nonmoving party cannot prove an essential element of the claim at trial.[1] *Hannan*, 270 S.W.3d at 5. Both of the burden shifting methods require more than a conclusory assertion that the nonmoving party has no evidence. *Byrd*, 847 S.W.2d at 215. The moving party must either produce evidence or refer to evidence already in the record that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). To negate an essential element of the nonmoving party's claim, the moving party must point to evidence that tends to disprove a material factual allegation made by the nonmoving party. *Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 631 (Tenn. 2009). If the moving party fails to meet its initial burden of production, then the nonmoving party's burden is not triggered and the summary judgment motion fails. *Martin*, 271 S.W.3d at 83.

---

[1]The General Assembly has since changed this standard with respect to actions filed on or after July 1, 2011 by enacting Tennessee Code Annotated section 20-16-101 (Supp. 2012). Because CHA's complaint was filed on September 3, 2010, the *Hannan* standard governs in this case.

If the moving party does satisfy its initial burden, the court must examine the evidence produced by the nonmoving party to determine whether it has demonstrated genuine issues of material fact or that the moving party is not entitled to judgment as a matter of law. *Mills*, 300 S.W.3d at 631-32. Any doubts concerning the existence of a genuine issue of material fact must be resolved in the nonmoving party's favor. *Martin*, 271 S.W.3d at 84.

The trial court's resolution of a motion for summary judgment is a matter of law; on appeal, we review its ruling de novo without a presumption of correctness. *Id.* Also, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Id.*

### *The Survival Clause*

CHA alleged that the defendants were liable for breach of contract because the White Oak Apartments failed to comply with representations made by the individual defendants in the transaction documents. The trial court granted summary judgment to the defendants on CHA's breach of contract claims, holding that the claims were time-barred by the Survival Clause in the Agreement. While the facts regarding CHA's breach of contract claim were not disputed for purposes of the defendants' summary judgment motion, CHA contends that the defendants are not entitled to judgment as a matter of law because the trial court erred when it interpreted the Survival Clause to create a contractual limitations period shorter than the statutory period. CHA contends that the Survival Clause should be interpreted only as a mechanism to limit the defendants' indemnification obligation without any effect on the statutory six-year limitations period of Tennessee Code Annotated section 28-3-109(a)(3). Conversely, the defendants argue that the trial court correctly interpreted the Survival Clause as a contractual limitation that reduced the time for CHA to file its claim.

Tennessee courts have long upheld contractual limitations that reduce the statutory period for filing suit. *See, e.g., Guthrie v. Connecticut Indem. Ass'n*, 49 S.W. 829, 830 (Tenn. 1899); *Hill v. Home Ins. Co.*, 125 S.W.2d 189, 192 (Tenn. Ct. App. 1938). Accordingly, the question before us is not whether such a limitation is valid, but whether the Survival Clause of this particular contract provides for one. As the trial court noted, there are no Tennessee cases dealing specifically with the meaning and interpretation of survival clauses. However, the frequent use of survival clauses in purchase and sale agreements has led the courts of other jurisdictions to address the issue, providing us some guidance.

Some courts, such as those in New York and California, take a strict approach in determining whether a survival clause operates as a contractual limitations period. *See, e.g., Western Filter Corp. v. Argan, Inc.*, 540 F.3d 947 (9th Cir. 2008); *Hurlbut v. Christiano*, 63 A.D.2d 1116 (N.Y. App. Div. 1978). In *Western Filter*, the Ninth Circuit applying California

law held that a provision stating that the representations "shall survive the Closing for a period of one year" was ambiguous and therefore lacked the specificity to shorten the statutory filing period. *Western Filter Corp.*, 540 F.3d at 949, 954. The court noted that under California law, contractual limitations must be clear and explicit, and are to be strictly interpreted against the party invoking the provision. *Id.* at 953 (citations omitted.) Though it acknowledged that reading the survival clause as a contractual limitation was reasonable and perhaps more practical than the alternative, the *Western Filter* court stated that the provision's lack of clear and unambiguous language rendered it incapable of reducing the statutory filing period. *Id.* at 954.

Strict interpretation of the survival clauses, like courts in *Western Filter*, developed out of a public policy that does not favor contract clauses that "limit the right to sue to a period shorter than that granted by statute." *Id.* at 953 (citing *Hurlbut*, 63 A.D.2d at 1117). The same policy consideration has led other courts interpreting comparable survival clauses to take a similarly narrow view of their application. *See, e.g., Arcade Co. v. Arcade, LLC*, 105 Fed. Appx 808, 810-11 (6th Cir. 2004) (holding that because a provision that representations "shall survive the Closing for a period of one (1) year" neither mentioned nor purported to limit any "action," "lawsuit," or "demand," its language was not sufficient to support a finding that the parties intended to reduce the statutory filing period); *Hurlbut*, 63 A.D.2d at 1117 (holding that a provision that representations "shall survive the closing for a period of three (3) years" was "clear and unambiguous and suggests nothing from which a shortened period of limitations can be inferred"). In each instance, courts taking a narrow view of survival clauses noted state law requiring a heightened degree of specificity in contractual limitations provisions. *See, e.g., Western Filter Corp.*, 540 F.3d at 953 (noting that under California law, a contractual limitation "must be clear and explicit, and is to be strictly construed against the party invoking the provision"); *Arcade Co.*, 105 Fed Appx. at 810-11 (noting that contractual limitations upheld under Ohio law each included "specific language of limitation on the time within which to bring lawsuits or claims"); *Hurlbut*, 63 A.D.2d at 1117 (noting that under New York law, "the intention to establish a shorter period must be clearly set forth").

Not all courts share the same narrow interpretation of survival clauses. Some courts have taken a very different view of similarly worded survival clauses. In *GRT, Inc., v. Marathon GTF Tech., Ltd.*, the Delaware Court of Chancery held that a provision stating that representations "will survive for twelve (12) months after the Closing Date, and will thereafter terminate, together with any associated right of indemnification" unambiguously shortened the applicable statute of limitations to one year. C.A. No. 5571-CS, 2011 WL 2682898, at *7, *10 (Del. Ch. July 11, 2011). In so holding, the *GRT* court stated that Delaware law is "more contractarian" than that of other states, and that Delaware courts do not share the same public policy concerns as the courts of California and New York. *Id.* at

*12 (citing *Western Filter*, 540 F.3d at 953; *Hurlbut*, 63 A.D.2d at 1117). Though it acknowledged that the survival clause at issue would satisfy the stricter standards of California and New York law because it expressly terminated the representations and warranties as well as the buyer's indemnification remedy, the *GRT* court stated that even without the termination language, the survival clause would shorten the statutory filing period under Delaware law. *Id.* at *12 (citing *Sterling Network Exchange, LLC v. Digital Phoenix Van Buren, LLC*, C.A. No. 07C-08-050WLW, 2008 WL 2582920, at *1 (Del. Super. Mar. 28, 2008) (holding that a provision limiting the survival of representations to six months after closing placed a contractual limitation of six months on claims arising from those representations)). Delaware's more relaxed interpretation of survival clauses, which places more emphasis on respecting the contractual choices of the parties and less on public policy against limiting statutory filing periods, has been adopted by other courts as well. *See, e.g., State Street Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001) (holding that a provision that representations "shall expire on the second (2nd) anniversary of the Closing" shortened the period within which a claim could be filed); *Latek v. LeaseAmerica Corp.*, No. 90 C 7230, 1992 WL 170546, at *2-3 (N.D. Ill. July 16, 1992), *aff'd*, 7 F.3d 238 (7th Cir. 1993) (holding that a provision that representations "'shall survive . . . for a period of 18 months from the Closing Date' . . . clearly describes a contractual statute of limitations").

Turning back now to the case at bar, we note that the parties urge this Court to choose between the two methods of survival clause interpretation outlined above. However, we do not think that this case demands such a decision. Based on the cases outlined above, it is clear that the meaning and interpretation of survival clauses is impacted primarily by their precise wording and secondarily by the law applicable to them. A survival clause that clearly and unambiguously provides for a contractual reduction of the statutory filing period will be interpreted as doing so regardless of the approach taken in interpreting it. It is our opinion that the Survival Clause here does just that.

The Survival Clause can be readily broken down into smaller clauses. First, it states that "[t]he representations, warranties and indemnification and obligations set forth in this Agreement shall survive the execution of this Agreement for a period of three (3) years from the date hereof." The Survival Clause tags the date upon which the seller is released from the representations, warranties and indemnification and obligations in the contract as the "Indemnification Termination Date." If the Survival Clause stopped there, we would be forced to choose between the two approaches to survival clause interpretation detailed above. However, the Survival Clause goes further, stating that "if notice of any purported claim . . . is provided by [the party seeking damages] to [the breaching party], . . . there shall be no release of [the claim] with respect to any action commenced with respect to [the claim] in federal, state or local court within three (3) years after [closing]." The additional language

is clear evidence of the parties' intent to reduce the filing period to three years from the date of the closing. While the first part of the Survival Clause provides for a release of liability from the representations and warranties in the Agreement after three years, it is not immediately clear whether claims must be filed in that time. The subsequent language clears up any ambiguity by stating that where notice is given, the breaching party will not be released of liability for claims filed within three years, or alternatively, that in order to hold the breaching party liable for representations and warranties made in the contract, the party seeking damages must provide notice to the breaching party and commence its action within three years.

The Survival Clause in this case was clearly intended to operate as a contractual limitations period. The parties' statement that the breaching party will not be released of its liability where the party seeking damages commenced an action within three years is clear evidence of the parties' intent to limit CHA's filing period for breach to three years. Because it is undisputed that CHA did not file its claim within three years of closing on the Transfer Agreement, we affirm the trial court's grant of summary judgment to the defendants on CHA's breach of contract claims.

### *Misrepresentation Claim*

CHA also alleged that the defendants intentionally misrepresented the condition of the White Oak Apartments by stating that they complied with applicable federal, state, and local laws at the time of the Transfer Agreement. Though CHA's breach of contract claims are time-barred by the Survival Clause, the Survival Clause explicitly states that intentional misrepresentation claims are not subject to the shortened filing period. We therefore address it separately.

A claim for intentional misrepresentation has six elements:

1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). The defendants' argument attacks the fourth element, denying that they made any false representation either knowingly or without belief in its truth or recklessly. In support of their assertion, the defendants rely on the sworn affidavits of Paul and John Murphy that any

representations they made in the transactional documents regarding the condition of the White Oak Apartments were based on representations made to them by the architects and engineers who designed the property. Faced with the defendants' motion for summary judgment, the trial court found the defendants' supporting affidavits were sufficient to shift the burden of production to CHA to establish a genuine issue of material fact for trial. Because CHA failed to present any evidence beyond its own pleading in support of the challenge, the trial court granted summary judgment in favor the defendants.

CHA contends that the defendants' affidavits were conclusory and therefore insufficient to shift the burden of production to them. CHA's argument is a correct statement of law; conclusory affidavits in support of a summary judgment motion are not sufficient to negate an essential element of the plaintiff's claim. *See Hannan v. Alltel Pub'g Co.*, 270 S.W.3d 1, 8 (Tenn. 2008). The principle originated in *Blanchard v. Kellum*, a health care liability case in which the Tennessee Supreme Court held that the defendant's statement by affidavit that he acted "in a recognized and approved form" was not sufficient to shift the burden to the plaintiff on summary judgment. *Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). However, a conclusory assertion in an affidavit does not necessarily render the affidavit insufficient to shift the burden of production where the assertion is supported by identified facts. *See Miller v. Birdwell*, 327 S.W.3d 53, at 60-62 (Tenn. Ct. App. 2010) (holding that affidavits of two doctors in a health care liability case were sufficient to shift the burden because rather than making statements of compliance with the standard of care without explanation, they outlined the facts serving as the basis for their conclusion); *Barna v. Seiler*, No. M2008-01573-COA-R3-CV, 2011 WL 1486613, at *7 (Tenn. Ct. App. Apr. 19, 2011) ("[A]n affidavit is considered 'conclusory' if it does not indicate a factual basis for the opinion.").

The affidavits submitted by Paul and John Murphy each identified facts supporting their assertion that they did not have the requisite intent to make misrepresentations in the transactional documents. Each stated that any representations they made in the documents were based on the representations of the architects and engineers involved in building the structures. Neither Paul nor John Murphy merely denied having the intent to mislead without further explanation, as asserted by CHA, rather each provided underlying facts to serve as the basis for their conclusion. Accordingly, we find that their affidavits were sufficient.

By providing sufficient affidavits, Paul and John Murphy negated an essential element of CHA's claim–that the false representation was made knowingly or without belief in its truth or recklessly. The burden then shifted to CHA to provide evidence creating a genuine issue of material fact on whether Paul and John Murphy actually had the intent to make false representations in the transactional documents. After reviewing the record, this Court finds that CHA did not meet its burden. Accordingly, we affirm the trial court's grant of summary

judgment to Paul and John Murphy on CHA's intentional misrepresentation claim.

Though we find that the trial court's grant of summary judgment to Paul and John Murphy on CHA's intentional misrepresentation claim was appropriate in light of their burden-shifting affidavits, we note that no such affidavit was filed with respect to the third individual defendant–Adren Greene. Like Paul and John Murphy, Mr. Greene was accused of intentional misrepresentation in CHA's original complaint. Like Paul and John Murphy, Mr. Greene is a former member of Azalea Development who signed each of the relevant transactional documents. However, unlike Paul and John Murphy, Mr. Greene did not file an affidavit claiming that representations he made in the transactional documents were based on the statements of architects and engineers. Accordingly, the defendants failed to meet their burden of production on CHA's intentional misrepresentation claim with regard to Mr. Greene and summary judgment in his favor was inappropriate on that claim. As it may still be liable through respondeat superior for Mr. Greene's actions, we find that the trial court's grant of summary judgment to Murphy Development was likewise inappropriate on the intentional misrepresentation claim.

### *Holding*

The trial court's grant of summary judgment in favor of all defendants on CHA's breach of contract claims arising from the representations and warranties made in the transactional documents is affirmed. Additionally, the trial court's grant of summary judgment in favor of Paul Murphy and John Murphy on CHA's intentional misrepresentation claim is affirmed. However, the trial court's grant of summary judgment in favor of Adren Greene and Murphy Development, LLC on CHA's intentional misrepresentation claim is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed one-half to appellant Town of Crossville Housing Authority, and one-half to appellees John A. Murphy, Paul A. Murphy, III, Adren Greene, and Murphy Development LLC, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE